Daisy Lee Young v. Flanders Manufacturing
Company, et al

5-4766                                          436 S.W. 2d 100

Opinion Delivered January 20, 1969

*Garner & Parker* for appellant.

*Bethell, Starks, Callaway & King* for appellees.

Carleton Harris, Chief Justice.    This is a Workmen's Compensation case.    Daisy Young, appellant herein, was employed by Flanders Manufacturing Company, a manufacturer of furniture, from 1956 until June 2, 1964.    She was injured in 1962, contending that her shoulder and neck had been injured, was treated by Dr. Frank Lockwood, and returned to work without any loss of time.    She again received an injury in 1963, this time to the lower back, but returned to work after approximately a week in the hospital.    On June 2, 1964, Mrs. Young testified that she was working on the assembly line, lifting pieces of furniture, and moving them about on the conveyor belt, in order that the pieces could be sanded inside and out.    By quitting time, pain was moving up and down her back, and she was hurting in her neck and shoulders, arms and legs.    Mrs. Young never returned to work after the June 2, 1964, occur-

rence, and subsequently a claim for benefits was filed with the Workmen's Compensation Commission. There was no dispute but that she had suffered a low back injury, but appellees denied that any cervical spine disability was occasioned by her work. The referee found to the contrary, and held that this was also the result of an injury arising out of and in the course of her employment; that she had suffered a 40% permanent partial disability to the body as a whole considering both the low back condition and cervical spine condition. The referee's findings were appealed to the full commission, and that tribunal held that under the preponderance of the evidence, the condition experienced by claimant in the cervical area was not the result of the injury on June 2, 1964. This finding was affirmed by the Sebastian County Circuit Court, and from the judgment so entered, appellant brings this appeal. For reversal, it is simply contended that the commission erred in holding that Mrs. Young had failed to prove by a preponderance of the evidence that there was a causal relationship between the employment and the injury, i.e., the disability to the cervical spine.

Of course, we are only here interested in whether there was substantial evidence to support the finding of the commission. Mrs. Young testified that after the injury in 1962, she was treated by Dr. Lockwood who advised that she had sprained a muscle; medicine was prescribed, and she returned to work. According to the deposition of Dr. Karl Lindquist, a chiropractor, who first examined appellant on March 26, 1962, and at various intervals thereafter until June 4, 1962, she had suffered a strain of the cervical spine area, and he treated her with chiropractic adjustments. Dr. Lindquist did not find a herniated disc in the cervical spine of Mrs. Young, but he stated that her complaints on consulting him were pain in the shoulders and neck.

In 1963, claimant received an injury to the low back, was placed in traction by Dr. William E. Knight of Fort

Smith, but returned to work after approximately a week's stay in the hospital. Following the June, 1964, injury, Mrs. Young was treated by Dr. Knight and Dr. Hoyt Kirkpatrick until about the middle of August, 1964, at which time, according to claimant, she was released by these doctors, and advised to return to work. However, the witness stated that, because of continuing pain, she went to Dr. Horace Murphy in Little Rock on October 1 of the same year. Dr. Murphy made the diagnosis of a herniated disk of the lumbar spine, and performed an operation during the month to correct this condition. Appellant made several return visits to Dr. Murphy, complaining that, following the operation, the pain was more apparent in the cervical region of her back. Murphy (or his partner, Dr. Kenneth Jones) referred her to Dr. Robert Watson, a neuro-surgeon of Little Rock, who saw her for the first time on March 15, 1965. Watson's preliminary finding was to the effect that she was suffering from neuritis, but in June, this doctor diagnosed a herniated disk of the cervical spine, and operated to remove the ruptured disk. Mrs. Young was examined (March 7, 1966) by Dr. William G. Lockhart of Fort Smith, Dr. Lockhart having been selected for the purpose of testifying in the compensation proceeding relative to her condition.

It should be made clear that claimant has undergone surgery for two ruptured disks, one in the low back, or lumbar area, and the other in the neck, or cervical area. Appellees have accepted liability for the lumbar condition, and this appeal places in issue only the cause of the cervical condition. While the husband, daughter, mother, son, and one neighbor, testified that Mrs. Young complained of her shoulders and neck hurting after the injury in June, 1964, the record does not disclose that this complaint was made to any of the physicians at that time. The only record of any complaint to a doctor about neck pains (prior to March, 1965) is found in the deposition of Dr. Lindquist who testified

that she said she had, at the time of the 1962 injury, gotten "a catch in both shoulders and her neck."[1]

Dr. Murphy testified that his records did not reflect that Mrs. Young made any complaint concerning pain in the neck area in 1964, and he first saw Mrs. Young on the basis of that complaint in March, 1965. He said that the 1964 statement made to him by claimant reflected that the pain was in her low back and leg.

Dr. Watson, as previously set out, first saw Mrs. Young on March 15, 1965, and he stated that her primary complaint was with reference to her neck and upper extremities. Physiotherapy was first prescribed, but she was later placed in the hospital, Dr. Watson having concluded from myelographic studies that she had a ruptured disk.    An operation was performed on June 10, 1965, and a ruptued cervical disk was found and removed.    According to the doctor:

> "This disk had the appearance of both a long-standing situation, such as we would see on the plain x-rays, then in addition to that there was a fresher, more recent protrusion of disk material so that I thought that we were dealing with a disk that possessed two phases, one phase being a long-standing change and the other a more recent development that had likely accounted for the more recent symptomatology this lady had.
>
> \* \* \*
>
> "* * * I can simply say that one part of it was maybe many months', even a few years', duration, whereas, the other part was of probably weeks' duration. * * *
>
> \* \* \*
>
> "I think that the more recent protrusion was definitely associated with the existence of the form-

[1] Dr. Lockhart testified that Dr. Knight's records reflected that he (Knight) had treated Mrs. Young in June, 1964, with neck manipulation, but the chart reflected that this treatment was for headaches.

er trouble, and I think that the more recent change was simply a continuation or extension of earlier pathology in the neck."

The most that Dr. Watson would say in support of claimant's present contention was that it was possible that Mrs. Young could have sustained an aggravation of a pre-existing condition earlier than just a few weeks prior to his first interview, but he insisted that a 1964 injury would not have caused the complete picture that he observed in June, 1965. He would only say that the degenerative condition found could have been aggravated by trauma, though a study of his entire testimony clearly indicates that he did not consider this to have been the case.

Dr. Lockhart, who examined appellant at the request of her counsel, testified that he had an opinion, based upon the examination, the history taken from Mrs. Young, and a review of all medical records of Doctors Knight, Kirkpatrick, Murphy and Watson. He said:

"By history the trauma to the lumbar area seemed to be related to the incident that the patient relates of pulling the dressers and so back. I think the 2nd of June 1964. I cannot relate the neck aspects."

The doctor said that he could find no causative connection between the existence of the lumbar condition and the cervical condition. He stated:

"* * * I cannot, at the present time, relate to the cervical problem, or cervical condition, to the injury of June 2, 1964. Certainly the lumbar injury would seem to be documentary to this time. * * *

* * *

"* * * In summary, it seemed the acuteness of her symptomatology in the neck was related to a period of three to four weeks after first being seen

by Dr. Watson, and no where, by questioning her, or going over this aspect of her neck complaints, was I able to find anything with the same magnitude in her past history.''

Dr. Lockhart continued that lifting, bending over, or moving a heavy object, does not usually cause neck injury. On cross-examination, he said that it was possible that if the degenerative condition existed prior to June 2, 1964 (and this is somewhat speculative), the injury could have aggravated this pre-existing condition. However, he concluded that the history of the case indicated that this was unlikely.

Summarizing, although several doctors treated or examined Mrs. Young after the 1964 injury (two of them, Murphy and Lockhart, being physicians of her own choice), not a single one expressed the opinion that the injury described by claimant on June 2, 1964, was the cause of the condition of the cervical spine. The strongest statement in support of appellant's contention was that this injury *could* have aggravated the degeneration condition, provided such condition already existed at the time of the injury. Dr. Murphy was rather positive that no complaint about the neck was made by Mrs. Young in October, 1964, when he first examined her. Dr. Lockhart testified that in his opinion the condition complained of was not caused by the lifting of the furniture in June, 1964. There was substantial evidence to support the finding of the commission.

Affirmed.