## OCOMA FOODS AND TRAVELERS INSURANCE COMPANY v. MARIE GROGAN

5-6190                                         491 S.W. 2d 65

### Opinion delivered March 5, 1973

*James F. Dickson,* for appellants.

*M. D. Anglin,* for appellee.

CARLETON HARRIS, Chief Justice. Marie Grogan, appellee herein, commenced work for Ocoma Foods on September 9, 1952, and continued such employment until March 6, 1970, at which time she left, and has not since attempted to returned to work. During these years, she performed a variety of tasks, but was primarily a "saw girl" which involves moving whole chicken breasts through an automatic saw in order to separate them into two pieces. This work normally is performed while sitting down; Mrs. Grogan occasionally performed other duties such as "dipping turkeys" and weighing livers and hearts. Early in 1962, she began experiencing back pain and consulted Dr. Rhys Williams of Harrison, who referred her to Dr. John Tsang, a neurosurgeon who has treated Mrs. Grogan intermittently since May 5, 1962. Mrs. Grogan gave a history of persistent low back pain which had existed for some months prior to the date of examination, radiating into her lower left extremity. Dr. Tsang diagnosed a protruded intervertebral disc at L4 and in May, 1962, the doctor performed a laminectomy at L4. After recovering

from the surgery, Mrs. Grogan returned to work at Ocoma but again went to Dr. Tsang on October 23, 1962, giving a history of low back pain radiating into her lower right extremity. The doctor ultimately diagnosed a second protruded disc at L4 and performed a second laminectomy on November 6, 1962. Following her recovery, Mrs. Grogan returned to work, but again visited Tsang on January 30, 1965, and again gave a history of recurrent low back pain radiating into the left extremity. A third laminectomy at L4 was performed by the doctor on February 2, 1965, after which she again returned to work at Ocoma following recovery. On October 28, 1968, Mrs. Grogan once again consulted Dr. Tsang, giving a history of recurrent low back pain radiating into the right extremity. On this occasion, the doctor recommended non-surgical treatment and advised her to consult another neurosurgeon or orthopedic surgeon about the possibility of spinal fusion. She did not follow this advice, however, but again returned to work at Ocoma. After quitting her job in March, 1970, she again visited Dr. Tsang and again complained of lower back pain radiating into the lower right extremity. The doctor diagnosed lumbosacral strain along with a post-operative state resulting from three lumbar laminectomies and recommended non-surgical treatment, including the wearing of a corset. Mrs. Grogan was advised not to return to work for one year pending further examination.

On October 26, 1970, Mrs. Grogan filed a claim for workmen's compensation benefits alleging that she had sustained injury to her lower back and claiming medical expenses, doctor bills, hospital bills, weekly payments, and compensation for the percentage of injury to the body as a whole. Ocoma and Travelers Insurance Company, its carrier, controverted the claim, contending that she sustained no injury arising during the course of her employment; that she failed to notify respondents of any injury, and that any claim was barred by limitations. A hearing was conducted by a referee who, at the conclusion thereof, found that Mrs. Grogan's work aggravated a pre-existing back condition, causing her to terminate her employment, and that she was temporarily totally disabled for a period of one year from March 29, 1970 as a result of the aggravation; he also found that her claim

for benefits prior to October 26, 1968, was barred by limitations. Claimant was awarded a lump sum payment for temporary total disability, awarded all medical expenses incurred on or after October 26, 1968, and the question of permanent partial disability was held in abeyance. On appeal to the full commission, the decision of the referee was affirmed with one dissent, and on appeal to the Circuit Court of Carroll County, the order of the commission was affirmed. From the judgment so entered, appellants bring this appeal. For reversal, it is asserted that there was no substantial evidence to support the findings of the commission.

We agree with appellants that there is no substantial evidence that Mrs. Grogan sustained an accidental injury arising out of and in the course of her employment. Claimant stated that she first noticed back trouble in 1962, having a "catch" in her back, but she did not know what caused the trouble. No report of an injury was made to any official of the company. Dr. Williams testified that he first saw Mrs. Grogan in March of 1962 for a complaint of a pain in her back that had been present for quite some time. The doctor stated that she denied any history of trauma, and he recommended that she see Dr. Tsang. Dr. Williams had no opinion as to the cause of Mrs. Grogan's condition.

Dr. Tsang testified that from the time Mrs. Grogan commenced seeing him for her back condition, she had never indicated that she was injured in any respect, and his records indicated that no trauma was involved in her problem; he testified that she had mentioned that her job (passing chickens through a sawing machine) required no physical exertion, and he could not say that her work caused a disc herniation. The most that Dr. Tsang would state was that exertion, lifting, straining, stretching, or any kind of hard labor could possibily have aggravated her existing condition—"Well, it's possible that physical exertion, as you describe, could have aggravated her condition." However, he also stated that any type of movement, exercise, whether work on the job or housework, or even normal activities, could likewise aggravate the condition. He also said that coughing or sneezing seemed to aggravate Mrs. Grogan's pain. The first report

that Dr. Tsang made to Dr. Williams, after seeing Mrs. Grogan initially on May 5, 1962, was as follows:

"PRESENT COMPLAINTS:

1) Persistent low back pain for two months.
2) Associated with radiating pain into her left hip, left leg, and left foot.
3) Left leg "goes to sleep", at times.

PRESENT ILLNESS:

She began to notice those aforementioned symptoms two months ago with no history of injury. Coughing and sneezing would aggravate those pains. Lying down on a firm mattress relieved some of her suffering. She was in hospital for traction during early part of April with no remarkable improvement. She has not been able to work since April 1, 1962."

Dr. Tsang subsequently testified that his medical records clearly revealed no neurological changes in Mrs. Grogan since 1965.

Mrs. Grogan herself stated several times that she sustained no specific injury at any time; that the visits to Dr. Tsang were not occasioned by any injury and it is uncontroverted that she never notified any fellow employee or official of Ocoma Foods, either orally or in writing, of any injury sustained by her in the course of her employment. Several employees of the company testified that they had heard Mrs. Grogan mention that her back was hurting, but they had never heard her complain of any injury sustained on the job.

As stated, the most said by Dr. Tsang was that it was possible that her work aggravated her existing back condition, although the doctor also said that any type of work, at home or otherwise, possibly would have had the same effect. It is true that we have approved some commission awards where those furnishing the medical evidence used the terms "possible", "might", and "could cause". *Kearby* v. *Yarbrough Bros. Gin Co., et al,* 248 Ark. 1096, 455 S.W. 2d 912, *Exxon Corp.* v. *Fleming,*

253 Ark. 798, 489 S.W. 2d 766. In both cases, however, the condition suffered by the claimant was, under the evidence, tied in with the employment. In *Kearby* v. *Yarbrough Bros., supra,* though the fatal heart attack occurred after Kearby returned to his home from work, evidence reflected that Kearby had been working long hours for several weeks; that he was afflicted with chronic bronchitis with pneumoconiosis and that this chronic condition was related to his working environment; that he was suffering prior to going to the gin on November 17 (date of the attack) and had in fact received medical attention before going to work that morning. It was pointed out by Yarbrough that Kearby's doctor would not give a positive conclusion on the causal relationship between the work and the heart attack stronger than that there could be a connection. In upholding the commission and reversing the circuit court, we quoted the Court of Civil Appeals of Texas (San Antonio) as follows:

> "In determining whether or not a showing of mere possibility and no more has been made, all of the pertinent evidence on the point must be considered. The fact that an expert medical witness, in speaking of cause and effect uses such expressions as 'might cause', 'could cause,' 'could possibly cause,' or phrases similar thereto does not preclude a jury finding of causal connection, provided there be other supplementary evidence supporting the conclusion."

In *Exxon Corp.* v. *Fleming, supra,* Fleming received a brain injury on the job, and we held there was substantial evidence to support the commission in its finding that a subsequent heart attack was related to the injury received on the job. But here, there was never any injury on the job and no evidence that there was a causal relationship between the employment and the disability. In *Young* v. *Flanders Mfg. Co.,* 245 Ark. 976, 436 S.W. 2d 100, we commented that although several doctors, including Mrs. Young's physicians, treated Mrs. Young after a 1964 injury, not a single one expressed the opinion that the injury described by claimant was the cause of the condition of the cervical spine. Here, two physicians of Mrs. Grogan's choice had examined and treated her, and neither would express the opinion that her work was the

cause of her ailment. In *Farmer* v. *L. H. Knight Co.*, 220 Ark. 333, 248 S.W. 2d 111, we pointed out that the burden of proof is on the claimant to show that the injury or death of the employee was the result of an accidental injury that not only arose in the course of the employment, but in addition, that it grew out of, or resulted from, the employment. That burden has not been met in the instant case.

Under this finding, there is no necessity to discuss the question of whether Mrs. Grogan's claim was barred by the statute of limitations.

The judgment of the Carroll County Circuit Court is accordingly reversed with directions to reverse the award made by the commission.

It is so ordered.