JOHNSON AUTO CO. *v.* KELLEY.

5-1409                                      307 S. W. 2d 867

Opinion delivered December 9, 1957.

[Rehearing denied January 13, 1958.]

*J. H. Spears,* for appellant.

*Douglas Bradley,* for appellee.

MINOR W. MILLWEE, Associate Justice. The sole issue on this appeal is whether there is substantial evidence to support the finding of the Workmen's Compensation Commission to the effect that the death of Morris C. Kelley on May 30, 1956, arose out of and in the course of his employment with the appellant, Johnson Auto Company. A further contention that Kelley's death was due solely to his intoxication has been abandoned by said appellant and its insurance carrier.

Appellant, Johnson Auto Company, is engaged in the sale and service of Ford automobiles at West Memphis, Arkansas, as a metropolitan dealer with an unrestricted trade territory. Appellee is the widow of Morris C. Kelley who had been employed as an automobile salesman by said appellant for 18 days at the time of his death on May 30, 1956.

Appellant kept its place of business open from 8:00 A. M. until 9:00 P. M. daily. The six automobile salesmen were required to do "floor duty" at the place of business in three daily shifts of one to three men each. The first shift was from 8:00 A. M. until 1:00 P. M., the second from 1:00 P. M. until 6:00 P. M. and the third from 6:00 P. M. until 9:00 P. M. Three salesmen were usually assigned to each morning shift which frequently would be handled by only two when one of them wanted off to do outside work. Frequently only one salesman was assigned to the shift beginning at 6:00 P. M. and the men were permitted to, and frequently did, "swap shifts." When not on floor duty the salesmen were unrestricted in their movements in their sales work and were furnished with cards and handbills to use in soliciting and promoting sales.

On Monday May 28, 1956, as was customary, a bulletin was posted in the salesroom showing the floor duty shifts assigned to the various salesmen for the week. Kelley was assigned to the 8:00 A. M. and 6:00 P. M. shifts on Monday and 1:00 P. M. shift on Tuesday, May 29th. He was also assigned to floor duty at 8:00 A. M. and 6:00 P. M. on Wednesday May 30, 1956, but there is some uncertainty in the evidence as to the 6:00 P. M. assignment. Woods Wright, appellants' sales manager, thought he might have put Kelley's name down as a substitute for another salesman previously assigned to that shift on the evening of May 29th. Wright admitted that, in such event, the only opportunity Kelley had to learn of such substitution was at a sales meeting held Wednesday morning May 30th. The schedule itself tends to corroborate such a change in the 6:00 P. M. assignment and there is no showing that Kelley had actual knowledge of such change.

All salesmen were paid on a commission basis and given a monthly allowance for the operation of a current model automobile which they were required to own and use as a demonstrator. Kelley purchased a new 1956 model Ford car shortly after going to work.

When not on floor duty, the salesmen were free to work the unrestricted trade territory as they saw fit.

The salesmen were also required to attend sales meetings held daily, except Sunday, at 8:00 A. M. The meetings were usually conducted by Sales Manager Wright at appellant's place of business but occasionally at the plant of the Ford Motor Company in Memphis, Tennessee. Immediately after the sales meeting held Wednesday May 30, 1956, Kelley told Mr. Wright he was going to Jonesboro to try to sell a man a car. Wright knew that Kelley had been negotiating with Mr. Lakey, a prospective buyer at Jonesboro, and made no reply to Kelley's statement.

It was shown that Lakey, the prospective purchaser at Jonesboro, was sleeping on the morning of May 30th, with instructions to fellow firemen that he was not to be disturbed. Kelley stopped for a short time at the Wagon Wheel, a beer tavern in Trumann, Arkansas, about 10 A. M. where he drank a Coca Cola and distributed some of his cards and handbills. He then visited a barber shop in Trumann where his friend, Walter Sims, worked. He stayed there until 12:00 o'clock when most businesses in town closed each Wednesday for the rest of the day. While there he made known his employment with Johnson Auto Company and talked with one of the shop's customers about the sale of a car while the latter was getting a haircut. When the shop closed Kelley and Sims drove around Trumann then to Lake City, Monette, Leachville, Manila and back to Trumann about 6:00 P. M. with Sims driving Kelley's new Ford demonstrator car most of the way. Kelley had talked to Sims about buying a car when he was working for another dealer. They were joined on the trip from Monette to Leachville by a television repairman with whom Kelley also discussed the sale of an automobile. During the course of the afternoon Kelley and Sims each drank several bottles of beer and played pool at one place. Kelley was well acquainted in the area and had many friends there.

Kelley learned that Dorse Keller, owner of the Wagon Wheel, was interested in purchasing an automo-

bile to be used in a political campaign he was making. When he returned to the tavern about 7:30 or 8:00 P. M. Kelley had a waitress call Keller at his home and ask him to come to his place of business so that Kelley could try to sell him a car. Keller came down about 8:30 P. M. and they discussed sale or trade of automobiles for more than an hour. No sale was consummated but it was agreed that Keller would come to appellant's place of business for further negotiations. Kelley left in his demonstrator car for West Memphis about 9:45 P. M. A short distance from Trumann his car collided with a transport truck resulting in his instant death.

In rejecting appellants' contention that Kelley's death arose out of an excursion exclusively for his own personal pleasure and benefit, and not out of and in the course of his employment, the Commission concluded that the trip in question was made with the permission and tacit consent of Sales Manager Wright; and that, even if Kelley knowingly failed to appear for floor duty on the night in question such failure to follow instructions did not have the effect of removing him from the course of his employment. As the Commission observed: "We do not know whether Kelley ever actually arrived in Jonesboro. But assuming that he did not, was his conduct such as to place him outside the scope of his employment? In answering this question we must be mindful of the fact that Kelley was at no time on May 30, 1956, in territory in which he was forbidden to make a sale for his employer. We must also take cognizance of the well-known fact that automobile salesmen enjoy wide latitude in the matter of working out contacts for the purpose of selling cars. A good deal of promotion and entertaining looking to the establishment of a personal following enters into the well-recognized sphere of a car salesman's activities. Kelley, who had only joined the sales force of Johnson Auto Company a few days prior to his death, was certainly confronted with the proposition of making known to his friends and acquaintances the fact that he was associated with Johnson Auto Company. Kelley appears to have enjoyed a wide acquaintance in the area he traveled on the day of death.

In the absence of a specific sales prospect what was more natural than for Kelley, while in the vicinity, to circulate and advertise to his friends and acquaintances the fact of his association with Johnson Auto Company? This was to the interest of both Kelley and his employer. That he stopped by a pool hall, had a glass of beer, and engaged in light, meaningless conversation, does not mean that he had digressed from his business of selling cars. But in this particular case there are firmer grounds upon which to make a finding that Kelley's accidental injury arose out of and in the course of his employment. If he digressed from his employment when he left Trumann enroute to Lake City and other points, certainly he regained his employment when he returned to Trumann, which lies on the main thoroughfare between West Memphis and Jonesboro, and negotiated with Dorse Keller for sale of an automobile. No other purpose for contacting Dorse Keller is even suggested . . . The most that can be said for his failure to appear for floor duty is that he was not at the exact place his employer intended that he be, but nevertheless he was engaged in furthering his employer's interest in a territory from which the employer welcomed business."

The findings of fact by the Commission will not be disturbed on appeal if supported by substantial evidence; and in determining the sufficiency of the evidence, doubts should be resolved in favor of the claimant, and the evidence should be reasonably and liberally construed in his favor. *Herron Lumber Company* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252. Kelley's course of employment for the purpose of workmen's compensation, like that of the ordinary traveling salesman, covered both the time and place of the traveling as well as the selling of the goods. *Fank Lyon Company* v. *Oates,* 225 Ark. 682, 284 S. W. 2d 637. See also, *American Casualty Company* v. *Jones,* 224 Ark. 731, 276 S. W. 2d 41, where we affirmed the Commission's finding that a car salesman's death arose out of and in the course of his employment under a state of facts perhaps more favorable to the employer than those in the instant case. Under the facts presented here, we cannot agree that the

Commission was bound to find that Kelley was engaged in a purely personal activity and one which was for his own pleasure and benefit at the time of his fatal injury. In our opinion there is substantial evidence to support the finding that his death arose out of and in the course of his employment. The judgment of the circuit court, so holding, is affirmed.