CHAPMAN v. FINKBEINER.

5-1875

324 S. W. 2d 348

Opinion delivered May 25, 1959.

*L. A. Hardin,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

J. Seaborn Holt, Associate Justice. Appellant, Mrs. Dovie Chapman, widow of Charles Chapman, brought this appeal from a decision of the Workmen's Compensation Commission, (affirmed on appeal to the Circuit Court), disallowing her claim for compensation for the alleged injury and death by cerebral hemorrhage of her husband, which she contended arose out of and in the scope of his employment. For reversal appellant relies on these points: ''(1) The finding of fact and conclusion of law by the full Commission is against substantial undisputed evidence in this case. (2) There is no competent, substantial evidence in the record supporting the full Commission's finding of fact and conclusion of law. (3) The finding of fact and conclusion of law by the full Commission is based on an erroneous assumption of the law, that there had to have been an over work load on the deceased to have caused his injury, and in the absence of an over work load there could be no compensation.'' After a careful review of the record, we have concluded that there was substantial evidence to support the findings of the Commission and the judgment of the Circuit Court, therefore we must affirm.

Our rule, to which we have consistently adhered, was again stated in 223 Ark. 182, 264 S. W. 2d 834, *Duke* v. *Pekin Wood Products Company,* as follows: ''The findings of the Commission, which is the trier of the facts, will not be disturbed on appeal to the Circuit Court if supported by substantial testimony. —— In a long line of decisions since the passage of the act here in question, the rule has been clearly established that the finding of the Commission shall have the same binding force and effect as the verdict of a jury, or of a circuit court on appeal to that court or on appeal to this court. ——'' ''It is not our function to weigh the evidence in these compensation cases. That responsibility has been left to the Commission by the Legislature. —— The burden of proof is on the claimant to show that injury or death

of the employee was the result of an accidental injury that not only arose in the course of the employment, but in addition, that it grew out of, or resulted from, the employment," *Farmer* v. *L. H. Knight Company,* 220 Ark. 333, 248 S. W. 2d 111.

There appears to be little, if any, dispute of material facts which may be summarized as follows: The deceased employee, Chapman, had been working for his employer for about six years as a truck driver and his duties included loading the truck, driving it, and making deliveries. Chapman had been suffering from hypertension, or high blood pressure, for about five years prior to his death. It appears that on the Friday preceeding his death the following Tuesday, he had worked as usual, turned in his money on Saturday which he had received from deliveries, and had spent Sunday in the usual way for him and nothing unusual or out of the ordinary was observed by his fellow employees or his family on those days. On Monday morning following, Chapman arose at about the usual time and remarked, "I just don't feel good" and "said he just believed he would lay off that day — he didn't feel very good but he wasn't particularly sick." His wife called his employer at about 7 A.M. and reported that her husband was sick and wouldn't be at work. On Tuesday morning (the next day) Chapman arose as usual about 4 A.M., drank some coffee, told his wife that he felt pretty good, and drove his own automobile to work, clocking in at about 5 A.M. When he appeared for work, his appearance was "usual except maybe kind of a listless attitude or someone that just don't feel well or something like that," — he was asked to go get his truck from a parking lot, which request was unusual because he usually did it without being reminded. He took a longer period of time to get the truck than was usual and in backing the truck into the loading dock, he killed the motor several times, and let the truck roll down an incline causing it to bump the loading dock hard which was all unusual for this employee. Chapman performed his usual work but he was noticeably slower and less alert than usual, seemed unable to lift a 30-lb. case of Creamo, and appeared to

have less pep or energy and seemed to be tired. His fellow employees noticed that his color seemed to be kind of "grayish". Chapman told his employer that he didn't feel so good but that he would make it all right. A few minutes later Chapman remarked that he didn't feel any worse than when he had come to work but in response to a question from his immediate superior, Chapman remarked that he felt pretty bad and clocked out at 5:26 A.M. He drove his own automobile home and told his wife, "I just couldn't make it today and just had to come home". She saw that there was something apparently wrong with Chapman, he looked pale and white and couldn't hold anything with his hands. She immediately called a doctor and Chapman was sent at once to a hospital with his condition continually growing worse, ending in his death at about 10:30 that morning which was due to "spontaneous subarachnoid hemorrhage".

Three medical experts testified in this case on the question as to whether there was any causal connection between Chapman's employment and his death. One of these doctors, on being asked, "Assume an individual 49 years old suffering from hypertension, who, on the morning of his death had engaged in the loading of meat packages on a truck, which involved bending over and picking up the packages and placing them in the truck. I will ask you if that activity might be or could have been a precipitating factor or could have contributed in any way to the rupture which brought about the hemorrhage in this case," answered, "It is possible". It is significant that in this doctor's testimony he does not say that it was "probable". On the other hand, two other medical experts, neurosurgeons, Doctor John Adametz and Doctor Frank Padberg, in answer to hypothetical questions, testified to the contrary. Dr. Adametz testified: "It is my opinion that Mr. Chapman's work as described in the question was non-contributory to the cause of his death . . . With this note of explanation, I repeat it is my considered opinion that Mr. Chapman's work on March 12, 1957, was in no way contributory toward his cause of death" and "For the reasons which I have previously stated, it is my opinion that

the physical work which the patient participated in on March 12, 1957, had nothing to do with the spontaneous subarachnoid hemorrhage which was the cause of his death'' and that Chapman's work activity did not ''trigger'' the rupture. Dr. Frank Padberg, on being asked for his opinion whether the work described in the record and the work which Chapman was performing on the morning of his death was a causative factor in his death, expressed the opinion that death was due to subarachnoid hemorrhage and that the work which Chapman did that morning did not cause that rupture. He further gave as his opinion, upon being asked about the lifting of some packages by Chapman, ''It is improbable that the exertion and that moving these packages, cases, caused this rupture''. We hold that the testimony of these two specialists, Adametz and Padberg, was substantial and sufficient to support the findings of the Commission and the judgment of the Pulaski Circuit Court.

On appellant's third contention, in effect, that appellees defended on the ground that there was no ''over work load'', but little need be said. As we read the record, appellees' defense was that there was no causal connection between the employee's work and employment on the one hand, and his death on the other. The Commission did not base its findings on any showing of an increased work load, but on the contrary, found: ''After carefully considering all of the evidence in this case, we are, therefore, of the opinion that claimant has failed to sustain the burden of proof that is upon her to establish a causal connection between the deceased's death and his employment, and her claim for dependency benefits must, therefore, be denied and dismissed.''

The answer to appellant's objection to the hypothetical questions prepounded to Doctor Padberg and Doctor Adametz, we hold is that the objections he now makes here on appeal were not made until the appeal reached this court and therefore, come too late. Appellant refers to ''the hypothetical question prepounded to Dr. Padberg as having omitted undisputed essential facts in this case — did not give in sequence certain evidence of the morning when Chapman left his work to return to

his home," and to the hypothetical question to both Doctors Adametz and Padberg as "omitting employee's work record and leaving out of consideration the undisputed fact that Chapman left and did not work as usual the morning of ——". It is undisputed, as indicated, that prior to appellant's appeal to this court, no where does he appear to have objected to the form or content of these hypothetical questions, nor does he complain that they were not complete and fair. In *Southwestern Gas and Electric Company* v. *Halter,* 200 Ark. 244, 138 S. W. 2d 793, (Headnote 4), we held: "The objection that hypothetical questions put to witnesses who testified as experts did not include all undisputed material facts as they should have done, and included certain other facts which there was no testimony to establish, could not be raised for the first time on appeal." No error appearing, we affirm.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting.

In respectfully dissenting to the majority opinion, I am convinced the finding of fact and conclusion of law by the full Commission is based on an erroneous assumption of the law and that assumption is: There had to have been an over work load on the deceased to have caused his injury and in the absence of an over work load there could be no compensation. The hypothetical questions propounded to the doctors who testified in this case did not take into consideration the work load the deceased had been carrying prior to his death. Mr. Chapman worked 5 days a week and most of the time from 10 to 15 hours per day for approximately 5 years prior to the date of his death. The record reflects that during the week ending February 13, 1957, Mr. Chapman worked a total of 54½ hours; the week ending February 20, 1957, he worked a total of 58¾ hours; the week ending February 27, 1957, he worked 61½ hours; the week ending March 6, 1957, he worked 57½ hours; the following week on Friday, March 8, 1957, Mr. Chapman worked a total of 15 hours for that day and this was the last day he worked

until March 12, 1957, the date of his injury and death. It is admitted that Mr. Chapman visited a doctor one time in 1953 and received treatment for high blood pressure. The record reflects that he did not go back for additional treatment but continued taking the medicine prescribed at that time. It is my contention that the work load carried by Mr. Chapman during his employment contributed to his injury and death.

In my opinion the hypothetical questions propounded to the doctors did not take the prior work load into consideration. The majority opinion relative to this matter is as follows:

"It is undisputed, as indicated, that prior to appellant's appeal to this Court, nowhere does he appear to have objected to the form or content of these hypothetical questions, nor does he complain that they were not complete and fair.

"In *Southwestern Gas & Electric Company* v. *Halter,* 200 Ark. 244, 138 S. W. 2d 793, (Headnote 4) we held:

" 'The objection that hypothetical questions put to witnesses who testified as experts did not include all undisputed material facts as they should have done, and included certain other facts which there was no testimony to establish, could not be raised for the first time on appeal.' "

The case cited by the majority was not a workmen's compensation case. The Workmen's Compensation Law (Sec. 81-1327 Ark. Stats.) is as follows:

". . . The Commission shall not be bound by technical or statutory rules of evidence or by any technical or formal rules of procedure, except as provided by this Act . . ."

The Act does not provide in any other section for the formality of objections. Therefore, as I see it, there was no necessity for a formal objection to the erroneous hypothetical questions propounded by the appellees.

However, as a matter of law, we said in *Ford* v. *Ford,* 100 Ark. 518, 140 S. W. 993: "A hypothetical question to a medical expert must embrace all of the essential undisputed facts, and must not include any fact which the testimony does not tend to establish."

The questions so propounded dealt merely with the work Mr. Chapman did the morning of his death and not the work load over a long period of time prior to his death. It is admitted that the work that the deceased did on the morning of his death was not unusual or different from that previously performed by him.

This Court, speaking through Mr. Justice Minor W. Millwee, said in a very fine opinion delivered December 17, 1956, *Bryant Stave and Heading Company* v. *White,* 227 Ark. 147, 296 S. W. 2d 436, that it was not necessary to show an increased work load to prove an accidental injury under the Arkansas Workmen's Compensation Act; that if the claimant had a pre-existing condition and there is an injury or breakdown which, though basically brought about by the pre-existing condition, but nevertheless casually connected with the work he was doing, then it is an accidental injury within the meaning of the Act.

All of the doctors admitted that physical exertion is harmful to a person suffering with hypertension or high blood pressure. From the description of the deceased's work in the record, there can be no doubt but that it required physical exertion. Therefore, for the reasons set out above, I would reverse the finding of the Commission as a matter of law.