## ASPHALT MATERIALS CO., INC. *v.*
## Hugo E. COLEMAN

5-4362                                    420 S. W. 2d 921

Opinion delivered December 4, 1967

*Bridges, Young, Matthews & Davis,* for appellant.

*John Harris Jones,* for appellee.

Lyle Brown, Justice. This is a workmen's compensation case. Appellee, Hugo E. Coleman, claims temporary total disability as the result of a heart attack on July 12, 1966. His claim was denied by the commission, and that finding was reversed by the trial court. The only issue on appeal is whether there was any substantial evidence of a causal connection between the claimant's work and the heart attack.

For some nine years Coleman, 48 years of age, had been employed by appellant. The company was in the business of asphalting streets, driveways, and parking facilities. In that operation an asphalt finishing machine was used to spread hot asphalt mix. Coleman's

principal job was to stand on a platform at the rear of the mixing machine and keep the valves, which controlled the flow of asphalt, properly adjusted to spread the mix evenly. Immediately in front of his platform were two fire boxes in which the heat was generated to keep the asphalt at about 300 degrees. The asphalt machine had a capacity of seven and one-half tons. Coleman was also classified as a foreman in charge of the spreading crew in the absence of his supervisor. Those responsibilities were not too exacting because his supervisor testified the men in the crew knew what to do and how to do it.

July 12 was a hot summer day, with temperature approximately 100 degrees, and the crew worked that morning asphalting a parking lot. At 12:30 p.m. Coleman took an hour off for lunch and went home in the company's pickup truck. He returned to the job site at approximately 1:30, and at about the time he alighted from the truck he experienced a pain in the chest. He was taken to the hospital and was found to have suffered a heart attack.

It is not contended that Coleman experienced any unusual stress or strain on the job on July 12, or at any other date. Some two weeks prior to that date he left the job, complaining of a pain in the stomach, and did not return to work until July 5.

Three doctors gave medical testimony. One doctor was called by the claimant, and two doctors by the respondent. They were in agreement on a diagnosis of arteriosclerotic heart disease with coronary occlusion and posterior myocardial infarction. The claimant's doctor found a causal connection between the work performed on July 12 and the heart attack; the conclusions of the respondent's doctors were to the opposite effect.

The claimant's doctor listed three factors which he felt established a direct causal relation between the stress of claimant's duties and the onset of the spasm.

They were: (1) emotional factors of supervision; (2) physical stress caused by temperature changes; and (3) chemical irritants from the asphalt. The doctor reasons that "a good number of people who supervise employment of others will tell you that they become aggravated, exasperated, and mad to the point that they get sick sometimes, because they can't get the job done, because the people won't work . . . . I think that is a factor in any supervisory type job; *maybe not in him, I don't know. He may take it well.*" (Emphasis supplied.)

As to physical stress, the doctor emphasized temperature changes. He pointed out that Coleman was working in a temperature of 100 degrees and in close proximity to the fire boxes. As to chemical irritants from the asphalt, the doctor said: "I bring in just this chemical relationship *for thought* because in my own mind I think that that, too, *may* be a factor. (Emphasis supplied.)

On cross-examination claimant's doctor testified that from the standpoint of chemicals, he would place alcohol and nicotine in the same harmful category with chemicals from the asphalt. He advanced his theory that alcohol may be a causative factor in irritating the blood vessel wall, and that nicotine has a "basal spastic effect."

The doctor was asked about a written statement furnished respondent on August 16 in which he said: "His work *may* have precipitated the attack."

"Q. What did you mean by that statement?

"A. Exactly what it said.

"Q. It 'may' have precipitated his attack?

"A. (Affirmative nod.) As far as I am concerned, the man upstairs is the only one that knows."

With reference to alcohol and smoking, Coleman had given his doctor a history of inveterate smoking and of being a "long term user of alcohol." The doctor's case history showed that Coleman had consumed a considerable amount of alcohol over the weekend of July 4.

Opposed to the medical testimony we have just recited were the opinions of two doctors to the effect that there was no causal connection. As is usually found in heart cases before us, there were some inconsistencies brought out on cross-examination, but certainly not enough to destroy the credibility of the testimony of respondent's doctors.

After a careful examination of the record we are unable to say that there was no substantial evidence to support the unanimous conclusions of the commission. In a written opinion the commission laid stress on what they found to be weaknesses in the claimant's medical evidence. This was their prerogative as fact finders. The testimony here recounted justifies those findings. Finally, they found the preponderance of the medical evidence favored the contention of the respondent.

In resolving the issue before us, we are mindful of those cardinal principles so well established as to need no citation of authority: (1) the compensation act is to be construed liberally in favor of the workman; (2) the burden is on the claimant to show causal connection between his heart attack and his employment; and (3) we give the evidence its strongest probative force in favor of the commission's findings because those conclusions carry the weight of a jury verdict.

Reversed and dismissed.