LANE POULTRY FARMS ET AL *v.*
NALLIE C. WAGONER

5-5237                                         453 S. W. 2d 43

Opinion delivered May 4, 1970

*Shaver, Tackett, Young & Patton,* for appellants.

*John B. Hainen,* for appellee.

LYLE BROWN, Justice. This is a workmen's compensation case. The circuit court affirmed a finding of the Workmen's Compensation Commission that appellee, Nallie C. Wagoner, suffered a fifty per cent permanent partial disability to the body as a whole.

The single question on appeal is whether there is substantial evidence to support that finding.

Appellants, being the employer and the insurance carrier, insist that because of unusual circumstances we should "search the record, weigh the evidence, determine where the preponderance lies and decide whether there is substantial evidence . . . ." The claim was initially heard by a compensation referee, Mr. Norwood Phillips. All witnesses who personally testified appeared before him. Mr. Phillips kept the case open to allow both sides to introduce reports of subsequent medical examinations. Referee Phillips resigned to enter private practice before the additional evidence was filed and therefore did not render an opinion. When all subsequent exhibits were placed of record the claim was referred to Referee Newbern Chambers; he reviewed the complete transcript and rendered his opinion. The respondents appealed to the full commission. "Having considered the evidence, the referee's opinion and oral arguments," the commission concluded that the award of the referee should be adopted as its findings.

It is of course apparent that the referee (Mr. Chambers) who rendered the opinion, did not see and hear the witnesses. Therefore, appellants argue, the referee did not have the grasp of the case as if he had conducted the hearing. Appellants deduce from those facts that "the verity which such opinions are normally given" should not be here accorded. The defect, reason appellants, can be cured by this court searching the record, weighing the evidence, and coming to its own conclusions.

We do not agree with appellants. First, the findings of the referee are of no significance either to the circuit court or to this court; resort is had on appeal only to the findings of the commission in testing the sufficiency of the evidence. *Parker Stave Co.* v. *Hines,* 209 Ark. 438, 190 S. W. 2d 620 (1945). Secondly, if appellants felt aggrieved by the transfer of the claim from one

referee to another they should have addressed their grievance to the trier of the facts, namely, the compensation commission; that is the body which weighs the evidence. *Chapman* v. *C. Finkbiener, Inc.,* 230 Ark. 655, 324 S. W. 2d 348 (1959). The latter function was delegated to the commission by the Legislature. *Farmer* v. *Knight Co.,* 220 Ark. 333, 248 S. W. 2d 111 (1952). We do not try compensation cases de novo on appeal; we ascertain whether there is substantial testimony to support the commission. *McKamie* v. *Kern-Trimble Drilling Co.,* 229 Ark. 86, 313 S. W. 2d 378 (1958).

Appellee was employed by Lane Poultry Farms and sustained an injury on June 6, 1967. He was 54 years of age, and had worked many years at various laboring jobs without experiencing, according to his testimony, any disabling injuries or serious physical problems. His ailments at the time of the accident were some degenerative joint disease and vascular irregularity. Appellee insisted that those conditions created no physical problem. There was an abundance of testimony that prior to the accident appellee was very active, working regularly, making a large garden, driving a truck, hunting, and fishing. On the occasion of the accident appellee was "pulling" ice with an electric hoist. One of the two containers fell from the hoist. In moving backward suddenly to avoid being struck, he fell over one of the container lids, his left leg doubled, and the full weight of his body fell on that leg. Appellee went to Dr. Bill Dickinson at DeQueen the next morning because he thought he had wrenched his back in the fall. Appellee was hospitalized for some three weeks, then for another month he was an outpatient of Drs. Dickinson and Shukers. He did not respond to treatment and the doctors concluded their patient was suffering from severe muscular strain in the lower back, continuation of muscle spasm, and a possible ruptured intervertebral disc. They referred appellee to Dr. Knight, an orthopedic surgeon in Texarkana. There appellee was again hospitalized for about three weeks. That was in October 1967, and thereafter he was an out-patient under Dr. Knight until

July 1968. In Dr. Knight's final report on July 8 he stated these conclusions:

> It would seem that he is not going to return to work and I would recommend that the insurance company settle with him on these lines. I think his final diagnosis has to stand at degenerative joint disease, mild, lumbar spine, this being an antedating condition. Perhaps it was aggravated by his trauma; that is to say, aggravation of a pre-existing disease, but I would not specifically connect the degenerative joint disease to his occupation. At this point I would rate him as having a permanent disability to the vertebral column of 5% from the degenerative joint disease.

Appellee reported back to Dr. Shukers with the complaint that he was wholly unable to do any type of work requiring lifting, bending, reaching, or walking to any extent. Dr. Shukers was not in full agreement with Dr. Knight's findings and it was decided to send appellee to a neurosurgeon. Dr. Padberg of Little Rock was selected. A thorough examination was conducted on September 8, 1968, by Dr. Padberg. It was his tentative finding that appellee "may have some general joint disease associated with probably a postural protrusion of the intervertebral disc at L4-5 and with considerable vascular changes in both lower extremities." He stated that he would like to see appellee again in approximately two months. The follow-up examination in December revealed to Dr. Padberg that appellee was growing progressively worse. Among other things there was a diagnosis of a probable "protrusion of the intervertebral disc at the true level of L5-S1 and true L4-5 level with a bulging bilateral lesion." Dr. Padberg concluded that appellee "probably would have a permanent partial disability to the extent of at least 35% to the body as a whole." The doctor conceded that he was not satisfied with his percentage of evaluation "but it is about the best thing I can come up with for this patient at this time." He suggested the possibility that

surgery could reduce the disability but was not certain of good results.

We find substantial evidence in the record to warrant a finding that the claimed injury not only did primary damage to the lower back region but was of such severity as to aggravate pre-existing conditions which had not before caused claimant any physical inhibition.

The commission increased the functional disability finding of 35% by 15% to include compensation for the inability of appellee to earn wages. *Glass* v. *Edens,* 233 Ark. 786, 346 S. W. 2d 685 (1961). Even if an operation reduced the percentage of appellee's disability he would still be dependent on hard labor for a livelihood. He has a fourth grade education, no vocational training of any type, and is now 56 years of age. Therefore if wage earning became a realization it would certainly be limited; there was found to be a good probability of some productive years if an operation were performed.

Affirmed.