Shirley CLARK, Widow *v.* PEABODY
TESTING SERVICE

78-288                                              579 S.W. 2d 360

Opinion delivered April 16, 1979
(Division II)

*Joseph W. Swaty,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

JOHN A. FOGLEMAN, Justice. This claim arises from the death of William Robert Clark, aged 38, on the job site where he was employed by appellee, Peabody Testing Company. The circuit court affirmed the Workmen's Compensation Commission's denial of the claim. Appellant asserts four points for reversal. We find no reversible error.

## Point No. 1

THE CIRCUIT COURT ERRED IN AFFIRM-ING THE COMMISSION'S OPINION BECAUSE SUCH OPINION REFLECTS THE FULL COMMISSION GAVE WEIGHT TO THE ADMINISTRATIVE LAW JUDGE'S OPINION.

Appellant's argument on this point is based upon these elements: The commission stated, in its opinion, that it

agreed with the decision of the administrative law judge; it followed the statement of the case made by this judge in his opinion; it quoted verbatim a hypothetical question (which appellant says was improper) propounded to a physician and the physician's answer (which appellant calls inconsistent); it used the same reasoning used by the administrative law judge; the commission cited, but did not follow, *Harper* v. *Henry J. Kaiser Construction Co.,* 233 Ark. 398, 344 S.W. 2d 856.

Certainly the commission's agreement with the referee's findings based only upon the evidence presented to the referee is not to be taken to mean that the commission accorded any weight to the referee's findings. Such cases as *Potlatch Forests, Inc.* v. *Smith,* 237 Ark. 468, 374 S.W. 2d 166, cited by appellant, have no bearing, because there is no indication whatever that the commission here only determined that there was substantial evidence to support the administrative law judge's findings. Furthermore, we give the law judge's findings no weight whatever. *Lane Poultry Farms* v. *Wagoner,* 248 Ark. 661, 453 S.W. 2d 43. See also, *Allied Telephone Co.* v. *Rhodes,* 248 Ark. 677, 454 S.W. 2d 93.

Point No. 2

THE CIRCUIT COURT ERRED IN FAILING TO FIND THERE WAS SUBSTANTIAL EVIDENCE, BOTH LAY AND MEDICAL, ON WHICH TO BASE ITS AFFIRMANCE.

According to appellant, her main point is that the circuit court made no specific finding that the evidence upon which the commission based its decision was substantial. Apparently appellant feels that it was reversible error for the circuit court to affirm the judgment without setting out the specific evidence it found to be substantial. The court's order stated that upon review of the entire file the order of the commission should be affirmed. There is no requirement in the Workers' Compensation Law that the circuit court, on review of the commission's decisions, make detailed findings of fact or state specific conclusions of law. In this case, the only question that could have been decided by the circuit court was whether the commission's action was supported by substantial evidence,

since there was no suggestion that the commission acted without, or in excess of, its powers, or that the award was procured by fraud. See Ark. Stat. Ann. § 81-1325 (b) (Repl. 1976). The question is one of law. *Cummings* v. *United Motor Exchange,* 236 Ark. 735, 368 S.W. 2d 82; *Mohawk Rubber Co.* v. *Buford,* 259 Ark. 614, 535 S.W. 2d 819. The findings of fact of the commission are conclusive and binding on the courts in the absence of fraud, and are not for de novo determination by the courts. Ark. Stat. Ann. § 81-1325 (b); *Oak Law Farms* v. *Payne,* 251 Ark. 674, 474 S.W. 2d 408; *Lane Poultry Farms* v. *Wagoner,* supra. The order of the circuit court is clearly indicative of a finding that there was substantial evidence to support the denial of compensation. In any event, we review the decision of the commission without regard to the action of the trial court. *Miller* v. *Everett,* 252 Ark. 824, 481 S.W. 2d 335; *Allied Telephone Co.* v. *Rhodes,* supra. See also, *Lane Poultry Farms* v. *Wagoner,* supra. Therefore, the failure of the circuit court to specify the evidence it found to be substantial, in support of the commission's action, is of no consequence.

## Point No. 3

### THE CIRCUIT COURT ERRED IN FAILING TO DETERMINE, AS A MATTER OF LAW, THAT THE COMMISSION RESOLVED ALL DOUBTS IN FAVOR OF THE CLAIMANT.

In her argument of this point, appellant argues that before either the circuit court or this court can affirm the commission, there must be a finding that the commission has viewed the evidence liberally in favor of the claimant. In this, appellant is mistaken, and as a matter of fact, has correctly predicted that we will say that there is no inconsistency in these statements: (1) that the commission must resolve all doubts in favor of the claimant and (2) that we must affirm the commission's decision if it is supported by substantial evidence. The resolution of doubts and factual issues favorably to the claimant is a function of the commission, not of the courts, which must view and interpret the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the commission and give the testimony its strongest probative force in favor of the action of

the commission, whether it favored the claimant or the employer. *Mass Merchandisers, Inc.* v. *Harp,* 259 Ark. 830, 536 S.W. 2d 729; *Turner* v. *Lambert Construction Co.,* 258 Ark. 333, 524 S.W. 2d 465; *Barksdale Lumber Co.* v. *McAnally,* 262 Ark. 379, 557 S.W. 2d 868; *Home Insurance Co.* v. *Logan,* 255 Ark. 1036, 505 S.W. 2d 25; *Warwick Electronics, Inc.* v. *Devazier,* 253 Ark. 1100, 490 S.W. 2d 792. On appeal, we resolve all doubts in favor of the commission's findings.[1] *Bale Chevrolet Co.* v. *Armstrong,* 241 Ark. 705, 409 S.W. 2d 328. We must affirm if we find any substantial evidence to support the commission's ruling. *Dura Craft Boats* v. *Daugherty,* 253 Ark. 340, 485 S.W. 2d 739; *Turner* v. *Lambert Construction Co.,* supra; *Potlatch Forests, Inc.* v. *Smith,* supra. So, the extent of our inquiry is limited to the determination whether there is any substantial evidence to support the commission's findings. *Sneed* v. *Colson Corp.,* 254 Ark. 1048, 497 S.W. 2d 673; *Superior Improvement Co.* v. *Hignight,* 254 Ark. 328, 493 S.W. 2d 424; *Dura Craft Boats, Inc.* v. *Daugherty,* supra. We will affirm the decision of the commission on the question of causation, unless there is *no* substantial evidence to support it. *Turner* v. *Lambert Construction Co.,* supra. Even if the preponderance of the evidence would indicate a different result, we will affirm the commission if reasonable minds could reach the conclusion reached by the commission. *Superior Improvement Co.* v. *Hignight,* supra. Or conversely, we will not reverse the commission's finding that the claimant failed to meet his burden of proof on causation unless fair-minded men could not have arrived at a finding adverse to the claimant. *Turner* v. *Lambert Construction Co.,* supra. The circuit courts must take the same view of the evidence we do.

---

[1] It is true that we said that, in determining the sufficiency of the evidence, doubts should be resolved in favor of the claimant in *Johnson Auto Co.* v. *Kelley,* 228 Ark. 364, 307 S.W. 2d 867, relied upon by appellant. In that case, however, the commission had found in favor of the claimant, and the statement was correct in that situation. This case has never been cited on this point except in a dissenting opinion in *Latimer* v. *Sevier County Farmers' Cooperative Inc.,* 233 Ark. 762, 346 S.W. 2d 673, where we affirmed the commission's holding that a widow had failed to establish a causal relation between her husband's employment and his death. The authority cited in *Kelley* was *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S.W. 2d 252, where we were also reviewing the evidence in a case where the commission awarded compensation. The correct rule is stated in *Bale Chevrolet Co.* v. *Armstrong,* and is consistent with our holding in both *Kelley* and *Latimer.*

## Point No. 4

THE CIRCUIT COURT ERRED IN AFFIRM-
ING THE COMMISSION BECAUSE THE
COMMISSION FAILED TO RESOLVE
DOUBTFUL MEDICAL TESTIMONY IN FAVOR
OF APPELLANT.

There is no distinction between medical testimony and other evidence insofar as the resolution of doubts is concerned in workers' compensation proceedings. In arguing this point, appellant relies upon *Dougan v. Booker,* 241 Ark. 224, 407 S.W. 2d 369, where this court reversed the action of the circuit court and of the commission, without regard to the substantial evidence rule. While this 4-2 decision (one justice not participating) would seem to lend some support to appellant's argument, there are some important distinctions. The claimant there had suffered a previous heart attack, for which he had been treated by a physician who advised him not to overtax himself and to stop and rest if he had any pain or fatigue. The undisputed evidence in *Dougan* was that the employee collapsed on the job as a result of *unusual* exertion and strain. The only evidence of a preexisting condition in this case is testimony relating to chest pains and shortness of breath, which may or may not have been symptoms of cardiac disease. There is testimony in this case from which it would not be unreasonable to infer that there was no *unusual* strain or exertion in the work being done by Clark. The two dissenting justices in *Dougan* pointed out that the court should affirm if there was any substantial evidence to support the verdict. They felt that the expert opinion testimony of a physician constituted substantial evidence to support the commission's denial of the death claim in that case. In view of the many cases decided since that decision on the extent of appellate review, *Dougan v. Booker* cannot be considered as authoritative on the facts in this case, insofar as the substantial evidence rule is concerned.

## SUBSTANTIAL EVIDENCE

Appellant does not state any point for reversal based upon her contention that there was no substantial evidence to support the commission's denial of her claim. Since that argument, however, is woven into her argument on every

point stated, we must consider it. We do find substantial evidence, when the evidence is viewed in the light in which we must view it. We must also keep in mind the requirement that the dependent claimant show by a preponderance of the evidence that the death of the employee arose out of and in the course of his employment. *Asphalt Materials Co.* v. *Coleman,* 243 Ark. 646, 420 S.W. 2d 921; *Wilson* v. *United Auto Workers International Union,* 246 Ark. 1158, 441 S.W. 2d 475; *Brooks* v. *Wage,* 242 Ark. 486, 414 S.W. 2d 100. See also, *Voss* v. *Ward's Pulpwood Yard,* 248 Ark. 465, 452 S.W. 2d 629.

The claimant, Shirley Clark, is the widow of William Robert Clark, who was 38 years of age when he died on July 19, 1977. He had been employed as a driller for Peabody Testing Service since January, 1977. Clark had lived continuously with Mary Collins, daughter of Olene Bates, in Sheridan since 1974. Mrs. Bates also lived in Sheridan. Mrs. Bates had a close relationship with Clark after she first met him in October, 1974. She testified that, during all the time she knew him, he never went to a doctor in Sheridan or Little Rock or any place she knew about, that he did not take medicine, and that she did not know of his being hospitalized. He smoked but c''d not use alcohol at all. He fished, hunted, wrestled with his 16-year-old son, played ball with his boys and played with his dogs. He was a real active individual. Some of these activities were rather strenuous. Mrs. Bates said that he never complained of excessive fatigue, chest pains, shortness of breath or dizziness. She never heard him complain about anything. She said he had no complaints after any of the activities in which he engaged, and that she was around him enough to have been aware of any such complaints if he had made them. She had never heard Clark say anything about his having any history of high blood pressure. She said she did not know of, or ever discuss with him, any history of diabetes. He was over six feet tall, was slender and not overweight. He took regular exercise. Mary Collins testified that Clark had no problem with his heart while he lived with her.

David Thompson, general manager for appellee, testified that Clark was accustomed to fairly strenuous work. Just prior to the commencement of the job on which Clark

was working when he died, he had worked on a job at Ozark during May and June. He worked ten hours a day, five days per week. He called in sick on a Thursday after that job was complete and was given Friday off, after which he took a one week vacation. He was off the job for a total of ten days. According to Horace Helms, Clark's helper in the two-man drilling crew, the work at Ozark was strenuous and the weather was hot. Helms never heard Clark complain of any illness while they worked at Ozark. Clark had never complained of shortness of breath, chest pains, excessive fatigue, or anything of that sort.

When Clark returned from his vacation, he and Helms commenced a job at Greenwood, which, according to Helms, should have been less strenuous work than that done at Ozark. The first day they just drove from Little Rock to Greenwood, located the site on which they were to drill and went to a motel. Helms said that Clark complained of chest pains that night and said that he was having a hard time breathing. Clark did not complain of any difficulty in breathing before he went to work, but Helms said that when they started drilling, Clark started talking about chest pains and having difficulty breathing. Clark and Helms had difficulty in keeping their rig drilling. Helms said this made Clark angry, but he characterized him as being rather calm. Helms said that he reckoned it was a pretty normal day, but that they had been working in hot weather all summer.

Both Clark and Helms called appellee's office that day. Sharon Allen, who worked in the office of the First Baptist Church of Greenwood, said that Clark and Helms were drilling about 50 yards across a courtyard from her office. She said that they came in the office to call their boss after the drilling rig had stopped. She described the day as humid. She recalled that the temperature was 101 or 102 degrees. She said Clark and Helms were in the office about 15 or 20 minutes before Clark died and that he looked real dark — his face was gray looking. He made no complaint about chest pains and the only thing Miss Allen noticed about him was the unusual facial color. According to her, Clark went back to the rig about five minutes before Helms did, and that just a few minutes later, she saw Helms pass the window, carrying

Clark. Helms brought him inside the building and laid him on the floor. Ms. Allen said that Clark didn't seem "to have any life" at that time.

Helms said that Clark had sat under a tree and said that he was going to rest. Helms stated that he then went to use a telephone, and when he returned, Clark was lying on the grass and beginning to turn blue.

Clark was taken by ambulance to the emergency room at Saint Edward Mercy Medical Center in Fort Smith. Resuscitation efforts in the ambulance and in the emergency room failed.

According to Dr. Stephen C. Graves, the emergency room physician, Clark arrived without heart beat or respirations and his pupils were fixed and dilated. A hospital report showed that Dr. Graves attributed death to cardiac arrest. The death certificate executed by the coroner showed that Clark died of "apparent natural causes." No autopsy was performed. Appellant filed a letter report of Dr. Graves in which he stated that he did not know whether Clark had any preexisting cardiovascular or cerebrovascular disease, but expressed the opinion that strenuous physical labor on a hot day *could result in,* or *could have* contributed to, his death.

Dr. Graves also testified by deposition. He stated that he had been unable to determine the cause of Clark's death in the emergency room and had notified the coroner. He had talked with Helms, who had come to the emergency room in the ambulance, and Helms had said that Clark had complained of chest pains on the day of his death and the preceding night. He was unable to give an affirmative or negative answer to the question whether high temperature or hard work, sweating and little rest *can* precipitate certain illnesses and cause death. He found nothing in the transcript of testimony in the case to indicate that Clark was engaged in extra hard work that might have caused him to have those "precipitating factors." Although he felt that heat would have an effect, if accompanied by sweating and loss of a lot of

body fluid, he said that Helms did not mention this. In his review of the transcript, the only suggestion he found that Clark was not in good health was Helms' statement relating to chest pains and shortness of breath, which Graves said *could be* due to intrinsic cardiac disease or coronary artery disease, but might not. He said he had no way of knowing whether Clark was predisposed to heart attack and other cardiac ailment, since he had not had any information on the considerations for determining predispositions, i.e., history of parental heart disease, high blood pressure, smoking, excessive caffeine, and being overweight, except for knowing that Clark was not overweight. The only history that Graves found that might have been a factor was the history of pain the night before Clark's death. A hypothetical question of the doctor on cross-examination, and his answer, were:

> Q. Doctor, I believe one of the witnesses at the hearing, a Mrs. Olene Bates, testified that Mr. Clark had no history of heart disease; that he was accustomed to work; that he regularly exercised; that he was not taking any medication; that he did smoke; that he had no history of diabetes or high blood pressure, or any other chronic illness of that type. If you assumed those facts, and based on that information which Mrs. Bates testified, would you feel that Mr. Clark would be predisposed to any type of heart attack?

> A. No. Given that information I would say that he was probably not predisposed.

On redirect examination, Dr. Graves stated that he was of the opinion that the chest pains Clark experienced the night before his death were either a heart attack or early warning signs of an attack that probably was the cause of Clark's death, but said that he could not be certain. He also said that it was not unusual for one to die after suffering heart pains during the preceding night, whether or not he had any history of heart problems, but it was unusual, though not unheard of, for a person of Clark's age to die of a heart attack; and, if there had been a heart attack the night before Clark's death, it would not be unusual for him to die the next day. All his information about Clark and the possibility of his having

had a heart attack came from Helms and the transcript. The doctor felt that using a large wrench in an effort to turn a bit would probably not bring about a second heart attack, but that getting out and working the day after a heart attack would more likely cause sudden death than staying in bed and seeing a doctor. He said that if Clark was performing the activity about which he read in the transcript, he would "probably be more likely" to have suffered a second attack.

On recross-examination, Graves said he "had an idea" that Clark had experienced a heart attack the night before his death and said that most "patients" who are undergoing a heart attack have an increased probability of additional heart disease or even death, as a result of physical activity, but that he would not say that Clark might not have died during the next day in any event and that he did not find anything in the transcript that happened to Clark on the day of his death that necessarily contributed to it. He found nothing to indicate that Clark had done anything extra hard that day that might have precipitated his death.

We should first dispose of appellant's contention that the commission could not have made the decision it made if it had followed *Harper* v. *Henry J. Kaiser Construction Co.*, 233 Ark. 398, 344 S.W. 2d 856. The impact of this decision insofar as this case is concerned, is that, since medical science has been unable to agree as to what causes, contributes to, or hastens a heart attack, the Workmen's Compensation Commission must make the decision in each case based upon the evidence in that case, but that in every such case the causal relation of the employment must be shown by a preponderance of the evidence. The mere fact that only one doctor testified does not diminish the impact of that decision, lighten the burden of the claimant or dictate the result the commission must reach. It is for the commission to determine the extent to which credit is given to testimony, even when it is undisputed. *Wilson* v. *United Auto Workers International Union*, 246 Ark. 1158, 441 S.W. 2d 475. It is quite clear that there was, to say the least, considerable uncertainty in the mind of Dr. Graves as to the cause of Clark's death. The commission took note of the fact that there were important factors militating

against resolving that uncertainty favorably to the party having the burden of proof. Among them were Clark's age, the lack of a history of heart disease, high blood pressure or chronic disease, his being accustomed to strenuous work, the lack of evidence that Clark had been sweating and losing body fluid, and the fact that he was not overweight. The uncertainty of the doctor's opinion that Clark's death was attributable to a heart attack causally related to his employment and the adverse factors admitted by the doctor were sufficient basis for the commission to find that there was no fair and reasonable basis for that opinion, and that the real import of his testimony was that it was his opinion that Clark was not predisposed to any type of heart attack, that there was nothing in the evidence before the commission to lead him to believe that either the weather or the work Clark was doing had anything to do with his sudden death and that the chest pains and shortness of breath experienced by Clark might or might not have been indicative of cardiac or coronary artery disease.

The evaluation of this testimony as to medical soundness and probative force was a question for the commission. *Barksdale Lumber Co.* v. *McAnally,* 262 Ark. 379, 557 S.W. 2d 868. It is the responsibility of the commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted; and, when it does so, its findings have the force and effect of a jury verdict. *McCollum* v. *Jones Truck Lines, Inc.,* 244 Ark. 762, 427 S.W. 2d 18; *Abbott* v. *C. H. Leavell & Co.,* 244 Ark. 544, 426 S.W. 2d 166; *Missouri City Stone, Inc.* v. *Peters,* 257 Ark. 917, 521 S.W. 2d 58. We cannot reverse such a finding unless we could reverse a jury verdict on the same question. *Barksdale Lumber Co.* v. *McAnally,* supra; *Mass Merchandiser, Inc.* v. *Harp,* 259 Ark. 830, 536 S.W. 2d 729; *Ark. Coal Co.* v. *Steele,* 237 Ark. 727, 375 S.W. 2d 673. The question presented to us is not whether there was either substantial evidence or a preponderance of the evidence to support appellant's claim, or a result contrary to that reached by the commission; it is whether there was any substantial evidence to support the finding in favor of the employer. *Barksdale Lumber Co.* v. *McAnally,* supra; *Mosley* v. *El Dorado School District,* 254 Ark. 326, 493 S.W. 2d 427. Even though the evidence might sup-

port a result different from that reached by the commission,[2] we must be convinced that fair-minded men could not have reached the conclusion it reached upon the evidence submitted, before we reverse the commission's findings for want of substantial evidence. *Purdy's Flower Shop* v. *Livingston*, 262 Ark. 575, 559 S.W. 2d 24; *Mass Merchandisers, Inc.* v. *Harp*, supra; *Julian Martin, Inc.* v. *Indiana Refrigeration Lines*, 262 Ark. 671, 560 S.W. 2d 228. In our determination of this question, we have considered only that evidence, and that version of it, which is most favorable to the appellee. See *Stephens & Stephens* v. *Logan*, 260 Ark. 78, 538 S.W. 2d 516; *Mass Merchandisers, Inc.* v. *Harp*, supra; *Clark* v. *Shiloh Tank & Erection Co.*, 259 Ark. 521, 534 S.W. 2d 240.

We are unable to say that fair-minded men could not reach the conclusion upon which the commission denied this claim. We most assuredly would not overturn a jury verdict based on the evidence here. In so concluding, we find that portions of Dr. Graves' testimony which were favorable to appellee were not incredible as a matter of law, or so contrary to common sense or so clearly based upon conjecture that we should disregard it. See *Barksdale Lumber Co.* v. *McAnally*, supra. Even though we might feel that the commission reached the wrong result, we are not at liberty to upset its finding; because we find substantial evidence to support it. *Potlatch Forests, Inc.* v. *Smith*, 237 Ark. 468, 374 S.W. 2d 166.

There are two other contentions made by appellant however, which we must consider, because if we agreed with either of them, our result might be different. First, appellant contends that the doctor's answer to the hypothetical question earlier set out should not be considered because some of the assumed facts were not supported by the evidence. She then invokes *Rhea* v. *M-K Grocer Co.*, 236 Ark. 615, 370 S.W. 2d 33, to support the conclusion that the key medical opinion was elicited by an improper hypothetical question. In the first place, we disagree with appellant's interpretation of the

[2]As we pointed out in *Ocoma Foods* v. *Grogan*, 253 Ark. 1111, 491 S.W. 2d 65, we have approved some commission awards where those furnishing the medical evidence used the terms "possible," "might" and "could cause." Such an uncertainty of opinion can hardly afford a basis for reversal of a commission's finding, adverse to the claimant, after it evaluated the medical testimony.

evidence upon which the hypothetical question was based. It seems to us that the question was based upon inferences fairly drawn from the testimony set out herein rather fully. We must remember that the commission is not bound by strict rules of evidence in the admission or consideration of any evidence, including medical testimony. *Barksdale Lumber Co.* v. *McAnally*, supra; *Davis* v. *Arkansas Best Freight System*, 239 Ark. 632, 393 S.W. 2d 237, 17 ALR 3d 986. It has broad discretion with reference to admission of evidence. *Northwestern National Insurance Co.* v. *Weast*, 253 Ark. 710, 488 S.W. 2d 322. It is free to make such inquiry and to conduct the proceedings in such a manner as to best ascertain the rights of the parties. Ark. Stat. Ann. § 81-1327 (a) (Repl. 1976). It certainly is not to be held in error where it does follow the rules of evidence, so long as there is no abuse of its discretion.

There was no objection made to the hypothetical question asked or to the answer given. If it should have included other facts or if it included facts not established by the testimony, an objection should have been made, and, not having been made, it cannot be made for the first time on appeal. *Chapman* v. *Finkbeiner*, 230 Ark. 655, 324 S.W. 2d 348. See also, *Southwestern Gas & Electric Co.* v. *Halter*, 200 Ark. 244, 138 S.W. 2d 793. If objection had been made, the question could easily have been reworded to meet any valid objection.

We do not read *Rhea* as dictating a reversal, where the basis given for the expert opinion is clearly stated. Furthermore, we do not consider the statement quoted from 3 Larson, Workmen's Compensation Law, 15-406, § 80.20, that an award could not stand where the medical opinion on which it is based was elicited by an improper hypothetical question to apply to a question to which no objection was made and which was not totally improper.

Appellant also contends in her reply brief that the commission should not have considered the answer given by Dr. Graves, which was based upon his review of the transcript. She again relies upon *Rhea*, in which we said that permitting a doctor to simply read the entire record and base his opinion upon that record without stating the particular testimony or facts upon which the opinion is based, makes him a trier of

the facts and usurps the function of the commission. Dr. Graves' opinion favorable to appellee was not based entirely upon his review of the testimony, as can be seen from our extensive outline of the evidence. On the other hand, his review of the transcript, to a considerable extent, was directed to the absence of facts to support his opinion that there was a possible causal relation, rather than the presence of facts to support the contrary conclusion. A critical factor in *Rhea,* not present here, was the fact that the medical expert who based his opinion on a review of the record did not have the complete record before him, as some of the pertinent evidence had not even been introduced when he gave his opinion. Here, again, no objection was interposed. Even if there had been, the commission might well have chosen to follow the rule of evidence now in force in judicial proceedings, eliminating objections to opinion evidence on the basis that it embraces an ultimate issue to be decided by the trier of fact. See Ark. Stat. Ann. § 28-1001, Rule 704 (Supp. 1977).

Another argument advanced by appellant in response to appellee's brief is the contention that the commission's findings of fact were deficient in that they were not in sufficient detail to permit the courts to ascertain whether the commission had applied the correct rules of law. We think that appellant might have been in position to complain had the commission merely stated its conclusion that appellant had failed to meet her burden of proof or that the evidence was insufficient to show that Clark had suffered an accidental injury arising out of and in the course of his employment. We do not deem a full recitation of the evidence to be required, so long as the commission's findings include a statement of those facts the commission finds to be established by the evidence in sufficient detail that the truth or falsity of each material allegation may be demonstrated from the findings, the losing party can specify the particulars in which they are not supported by the evidence and the reviewing court may perform its function to determine whether the commission's findings as to the existence or non-existence of the essential facts are or are not supported by the evidence.[3] 82 Am. Jur. 2d 287, et

[3]For an extended discussion of the various approaches to questions pertaining to the necessity, form and contents of findings of fact to support administrative determinations relating to workmen's compensation, see Annot. 146 ALR 123.

seq, Workmen's Compensation, §§ 558, 560, 563; 100 CJS 910, Workmen's Compensation, § 630 et seq; *Simmons Co. v. Industrial Accident Commission,* 70 Cal. App. 2d 664, 161 P. 2d 702 (1945); *Metros* v. *Denver Coney Island,* 110 Col. 40, 129 P. 2d 911 (1942); *Swan* v. *Williamson,* 74 Idaho 32, 257 P. 2d 552 (1953). The findings of the commission in this case cannot be held deficient.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.