Nancy SMITH et al, Alleged
Dependents of Timothy Curtiss
SMART, Deceased *v.* GLENN BROTHERS
TRUCKING COMPANY and INSURANCE
COMPANY OF NORTH AMERICA

CA 80-330                                    608 S.W. 2d 41
Court of Appeals of Arkansas
Opinion delivered December 3, 1980

*Philip M. Wilson*, for appellants.

*Friday. Eldredge & Clark*, by: *Frederick S. Ursery*, for appellees.

MARIAN F. PENIX, Judge. Timothy Smart died July 16, 1979 as a result of an injury sustained while working for Glenn Brothers Trucking Company. The claim was accepted as compensable and funeral expenses were paid. The Ad-

ministrative Law Judge held Timothy is survived by no dependents. This decision was affirmed by the Workers' Compensation Commission. Timothy's mother, Nancy Smith, and his sister, Natalie Smart, have appealed to this Court alleging dependency on the decedent Timothy. They also allege there should be a 50% penalty added to all benefits due to a violation of the safety provisions of Section 10(d) of the Workers' Compensation Act. They further allege all benefits should be doubled as Timothy was a minor, illegally employed in violation of Section 10(e) of the Act. Both the Administrative Law Judge and the Commission held the mother and sister were not Timothy's dependents.

Timothy was born April 7, 1964 in Maryland. His sister, Natalie, was born October 30, 1965. Their parents divorced in 1971. They have received no support from their father since that time. Nancy, their mother, remarried and they moved to Arkansas. On June 4, 1979, Nancy, having separated from her husband Ernest Smith, moved with Natalie back to Maryland. Before leaving for Maryland she talked to Brenda Glen about Timothy's application for a job at Glen Brothers. Brenda is the wife of Phil Glen, owner of Glen Brothers Trucking. Brenda picked up Timothy and took him to make out a job application. He was hired, although at the time he was only fifteen years old. Timothy remained with his stepfather, Ernest Smith and began working for Glen Brothers. Nancy and Natalie left Arkansas on June 4, 1979 for Maryland. Nancy went to work on June 27, 1979, for the State of Maryland. She testified she received her first pay check about the middle of August, 1979. She testified she received $50.00 cash by mail from Timothy four times from the time she left Arkansas until his death on July 16, 1979. She contends she and her daughter, Natalie, were dependents of Timothy at the time of his death, because she had no other means of income during the period in which he sent money to her. She testified she sold her piano to get enough money to make the trip to Maryland. The record reflects Nancy previously worked for the State of Maryland until August, 1977 when she moved to Little Rock. She had two years leave of absence "and if they had an opening within two years I would be reinstated at the same salary that I left." She

testified she borrowed $400.00 from her mother to help place a deposit on an apartment.

The Administrative Law Judge found Nancy moved to Virginia and began working as a district court clerk for the State of Maryland on June 27, 1979, earning $10,500.00 per year. He found Nancy to be gainfully employed and had failed to prove by preponderance of the evidence Nancy and Natalie were dependent upon Timothy on the date of his death. It was further held since no dependency benefits were awarded Nancy's and Natalie's claim for penalty under Section 10 (d) and (e) is moot. The Commission accepted these findings and affirmed.

Section 63.12 of Larson's Workmen's Compensation Law entitled "Partial Dependency" gives the following summary which puts the present claim in perspective:

> Among the cases in which dependency claims have failed largely on the strength of other income are that of a father with an income of $2,000 per year whose son's contributions went to pay for the family home, that of parents of a son who contributed $40 a week while the father earned $300 a month, that of aged parents with an income of $250 a month claiming dependency on a son whose weekly salary was $20 to $30 a week, that of parents with an income of $4,000 a year who received $240 a year from an adult son who did not live with them, that of a mother whose son contributed $1,440 to the total family income of $7,000, that of a daughter whose income combined with her husband's was $2,219 a year claiming dependency on her father who earned $3,281.99, and that of parents who were denied the status of dependents on their nineteen-year-old son, on a showing that the father earned $77 a week, the mother $42, and the decedent about $50 . . .

It is apparent from the record that neither Nancy, the mother, nor Natalie, the sister, was dependent upon fifteen year old Timothy for support. Timothy's step-father testified Nancy had bought clothes for Timothy prior to leaving for Maryland. Timothy began work on June 4, the day his

mother and sister left for Virginia and Maryland. They went in the family auto, stayed at Nancy's mother's beach home in Ocean City, Virginia, until her mother loaned her the money for a down payment on an apartment. Nancy had taken a two year leave of absence from her job as a court clerk for the State of Maryland. She reapplied for her old job June 6 and was told she could start to work June 27. Although there is evidence Timothy sent his mother $50.00 on four different occasions, we nevertheless find substantial evidence to support the Commission's findings that Nancy and Natalie were not in fact dependents of Timothy. We agree with the Commission that Nancy and Natalie have not met their burden of proof by a preponderance of the evidence.

If we find the decision of the Commission to be supportted by substantial evidence we must affirm. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W. 2d 360 (1979).

The Commission found "Since the within death case is compensable with no dependents and in accordance with Section 13(f)(2)(iii) and Section 10(c)(2) the respondents are ordered to pay $500.00 to the Second Injury Fund and $500.00 to the Death and Permanent Total Bank Fund."

Section 10(c)(2) of the Workers' Compensation Act provides:

Each employer or the insurance carrier of the employer shall in each case of death of an employee where there are no dependents pay into the Death and Permanent Total Disability Bank Fund the sum of Five Hundred Dollars ($500.00) which shall be in addition to the Five Hundred Dollars ($500.00) paid into the Second Injury Fund by such employer or his carrier in such cases.

Section 13(f)(2)(iii) provides in relevant part:

The employer, or if insured, his carrier, shall pay the sum of Five Hundred Dollars ($500.00) into such special fund for every case of injury causing death in which there are no persons entitled to compensation. The State Treasurer shall be the custodian of this special fund, to

be known as the Second Injury Fund, and the Commission shall direct the distribution thereof.·

The Commission decided the penalty provisions do not apply to payments to these funds. It is the responsibility of the Commission to administer the Workers' Compensation Act and its various funds. The Commission found Nancy and Natalie are not titled to dependency benefits and that the penalty provisions of the Act do not apply. We cannot say such finding is clearly contrary to the statutory intent.

Affirmed.