724

## A. G. HAYGOOD AND COAL OPERATORS CASUALTY CO. *v.* JOHN WILLIE TURNER

5-5083                                                                447 S. W. 2d 316

Opinion delivered December 1, 1969.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellants.

*Paul K. Roberts,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case involving a claim for hernia. John Willie Turner was the claimant before the Workmen's Compensation Commission; A. G. Haygood was the respondent employer and Operators Casualty Company was the respondent insurance carrier. The claim was filed under Ark. Stat. Ann. § 81-1313 (e) which provides as follows:

"In all cases of claims for hernia it shall be shown to the satisfaction of the Commission:

(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

(2) That there was severe pain in the hernial region;

(3) That such pain caused the employee to cease work immediately;

(4) That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter;

(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within forty-eight (48) hours after such occurrence. . .''

The Workmen's Compensation Commission denied the claim under our decision in *Miller Milling Co.* v. *Amyett,* 240 Ark. 756, 402 S. W. 2d 659. Turner appealed to the Bradley County Circuit Court where our decision in *Prince Poultry Co.* v. *Stevens,* 235 Ark. 1034, 363 S. W. 2d 929, was considered as controlling, and the order of the Commission denying Turner's claim was reversed. On appeal to this court, the employer and his insurance carrier rely on the following point for reversal:

''Appellee is barred from seeking Workmen's Compensation benefits because of his failure to comply with the requirements of Arkansas Statutes 81-1313 (E).''

The appellee is not *barred* from *seeking* compensation benefits because of *his failure to comply* with the requirements of the statute, but we agree with the Commission that this case is controlled by our decision in *Miller, supra,* and that Turner failed to show that the physical distress following the occurrence of the hernia

was such as to cause him to cease work immediately and to require medical attention within forty-eight hours.

Turner was employed by Haygood as a log cutter. About February 8, 1968, while he was cutting a log with a power chain saw, the saw bar became stuck in the log and when Turner "snatched" it loose, the saw "kicked back" and the handle of the saw struck Turner in the lower right side of the abdomen. The evidence of record would have sustained a finding that the first, second and fourth requirements of § 81-1313 (e), supra, were met. As to the third and fifth requirements, however, Turner testified:

"A.  . . . I had to sit down a little while.

Q.  Did it make you sick?

A.  Yes, sir, I was pretty sick for awhile.

Q.  Did you stop working then?

A.  Yes, sir.

Q.  And sit down?

A.  Yes, sir, and I sat down around thirty minutes. Seems like it got a little bit easy, and I got back up and started again.

* * *

Q.  I wish you would tell the referee, please, how you got along after that saw hit you in the stomach. Did you continue to get worse or better or what happened?

A.  No, it just continued to get worser all the time, kept getting sorer and the knot getting bigger and bigger, until it got to where I had to go on to the doctor.

Q. Did you keep on working during most of the days during this time?

A. Yes, sir, I worked most of them.

\* \* \*

Q. Now, didn't Mr. Haygood tell you you could go see a doctor if you wanted to?

A. Yes, sir, I think he did, but what, I mean, I didn't think I was hurt quite as bad as I was right at the time.

Q. Then, you continued to work fairly regularly?

A. Yes, sir.

Q. Until you had to go see Doctor Miles on August the Seventh?

A. Yes, sir.

Q. He says that is the first day he saw you. Is that right?

A. Yes, sir."

Turner's foreman, Mr. Haygood, testified as follows:

"Q. Do you recall him [Turner] reporting the incident to you?

A. Yes, sir.

Q. What did you tell him?

A. I told him that he could see the doctor or take off or whatever he wanted to do.

Q. And I believe he indicated that he rested may-

be thirty minutes or so and, then, went on working?

A. Yes, sir.

Q. And did he continue to work on up into August until he was hospitalized for this surgery?

A. Yes, sir.

Q. He indicated he may have missed some days. Do you recall?

A. I am not exactly—He might have lost a day or two.

Q. But he was working pretty regularly for you?

A. Yes, sir.

\* \* \*

Q. Do you recall, Mr. Haygood, whether Mr.— whether John Willie kept on complaining about this at times during, well, up to August the Seventh?

A. Oh, very little to me, if any.

Q. He did tell you, though, the same day that it happened?

A. Yes, sir.

Q. What did he tell you about it?

A. He just told me he had got hit in the side with the saw, and I asked him if he wanted to go to the doctor or set down or do whatever he wanted to do, take it easy, and he said he thought he could make it.

Q. And he did go ahead and work the rest of the day?

A. Yeah."

Dr. Dallas D. Miles, under date of September 27, 1968, reported as follows:

"John Willie Turner consulted me in my office on August 7, 1968, concerning knot in right inguinal region with associated pain. Examination revealed right inguinal hernia. Patient stated he had suffered a blow by a power saw while on his job (unknown exact date) at which time he reported it to his foreman, but symptoms did not warrant his seeking medical advice. However, on August 2, 1968, pain in involved area became worse."

It is true that Turner testified that his condition kept getting worse, "kept getting sorer and the knot getting bigger and bigger" until he had to go to a physician. This occurred over a period of six months from February 8, 1968, to August 7, 1968, rather than forty-eight hours as required by statute; and during all this period of time, with the exception of one or two days, Turner continued his regular work at cutting logs without requiring the attendance of a licensed physician.

This court reached opposite conclusions in the *Prince* and *Miller* cases but those cases were distinguished on their facts, as is the case at bar. We sustained an award in *Prince* but reversed an award in *Miller*, wherein we distinguish *Prince* in the following language:

"We are unable to say that the *Prince* case can be extended to reach the fact situation here. There the workman was injured on Thursday, but at his employer's request he worked on Friday and Saturday despite the fact that he was in pain. He tried to call

a doctor on Friday but failed to reach him. On Monday the claimant finally saw a physician, who found an inguinal hernia. In sustaining the award we were of the opinion that the facts justified the Commission in excusing the claimant's failure to consult a doctor until about two days after the expiration of the time allowed by the statute. We followed a very similar Mississippi case, where the court reasoned that for an injury 'to require' a physician's attendance within a certain number of days does not invariably mean that the physician must actually be consulted within that time. A substantial compliance may be sufficient.''

In *Miller* the claimant was picking up a heavy sack of feed on March 6, when he felt a sharp pain in his side. He rested for twenty or thirty minutes and then felt well enough to resume comparatively light tasks. He reported his injury to his employer and intended to consult a physician but put off doing so. He continued to work, avoiding heavy lifting, until early in July when he was forced to consult a physician who diagnosed and repaired an inguinal hernia. The Commission awarded compensation benefits and the circuit court affirmed the award. In reversing the circuit court judgment, we said:

''The appellee's position really narrows down to the contention that since he suffered severe pain on March 6 his condition therefore 'required' the attendance of a physician within forty-eight hours. The fallacy in this argument lies in its disregard of the fact that severe pain must exist in every instance of a compensable hernia, for that condition is the second of the five statutory requirements. Hence, if the appellee is right, the fifth requirement—that the attendance of a physician be required within forty-eight hours—adds nothing whatever to the earlier statement that severe pain must occur. We are not at liberty to give absolutely no

meaning and effect to the plain language of the statute. We must conclude that the requirement of immediate medical attention was not sufficiently established in this case.''

Three of the five requirements under the statute relating to claims for hernia have to do with pain. The plain wording of the statute practically eliminates subjective symptoms in claims for hernia. Not only must the claimant prove severe pain in the hernial region, he must prove that the severe pain caused him to quit work immediately. Not only must he show that the pain caused him to quit work immediately; he must also show that the physical distress was such as to require the attendance of a physician within forty-eight hours.

It might be logically argued that this statute penalizes an industrious employee who is willing to bear some pain and continue working as Turner apparently did in this case. It might also be argued that small and undramatic herniation was never intended to be covered by the Workmen's Compensation Act. But, in any event, it cannot logically be argued that this court has the authority to completely nullify, by liberal interpretation, any provision of a constitutional legislative act.

We conclude that the judgment of the trial court must be reversed and the order of the Commission, dismissing the claim, reinstated.

Reversed.