## J. W. HARKLEROAD AND UNITED STATES FIDELITY & GUARANTY COMPANY v. JAMES D. COTTER

5-5256                                                    454 S. W. 2d 76

Opinion delivered May 25, 1970

*Dudley & Burris,* for appellants.

*O. D. Pendergrass,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case involving a claim for hernia. The referee and the full commission awarded compensation benefits and the award was affirmed on appeal to the circuit court. On appeal to this court, the employer and compensation insurance carrier rely on the following point for reversal:

> "The appellee's claim for workmen's compensation benefits does not come within the purview of Arkansas Statute 81-1313 (e)."

We conclude that the judgment of the circuit court must be reversed. To hold otherwise would, in our opinion, do more than merely approve a liberal construction of the statute. It would, in effect, amend or nullify a provision of the compensation law which the legislature has seen fit to leave unchanged in effect for more than thirty years.

Ark. Stat. Ann. § 81 -1313 (e) (Repl. 1960) provides, in part, as follows:

"In all cases of claims for hernia it shall be shown to the satisfaction of the Commission:

(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall.

(2) That there was severe pain in the hernial region;

(3) That such pain caused the employee to cease work immediately;

(4) That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter;

(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within forty-eight (48) hours after such occurrence."

There is little question that on September 12, 1968, the appellee, Mr. Cotter, either sustained a hernia while in the course of his employment, or he sustained an injury on that date which later *resulted* in a hernia. Mr. Cotter testified, without controversion, that he and four other men were lifting a 4 x 9 inch eye beam about 20 feet long, when he felt something pull in his side and felt a stinging sensation in his inguinal region. He testified that the accident occurred about 10:00 o'clock on Thursday, September 12, and that he at first thought he had strained a muscle. He testified that he went ahead and worked the remainder of the day on Thursday, as well as all day Friday, and all of the following week. He says that he got to hurting at night until he couldn't sleep so he decided he had better go to a doctor. He says that on Monday, September 23 he went to Dr. Carl B. Arnold, and at this point Mr. Cotter testified:

"Q. Did he discover that you had an inguinal hernia?

A. He said that I had a direct hernia he thought he could feel a direct there but he said to stay off work a few days—he said it would not get any better—it would have to be operated on but it might be put off until a later date so I stayed off that week and then on a Thursday there was a big knot come up there in my side—well I thought my intrals come out—I don't know what it was.

Q. This would be Thursday following the Monday examination?

A. Yes, sir."

Mr. Cotter testified that he returned to the clinic on Friday morning and saw Dr. Ducker who diagnosed a hernia and recommended an operation. He says he entered the hospital on Sunday, September 29, and was operated on the following day. On cross-examination Mr. Cotter testified that he reported his injury to his employer on the day it occurred, Thursday, September 12, but that he continued to work on that and the following day. He testified that no one worked on Saturday, but the following week he worked the full five days and then went to the doctor on the following Monday, September 23. Mr. Cotter testified under questioning by the referee, as follows:

"Q. When you told Mr. Harkleroad, what did he tell you?

A. He told me to take it easy—I thought it was just a pulled muscle in there—it was hurting—the muscle went up to my ribs—it was hurting around my hip on there—I thought I had just sprained something."

Mr. Harkleroad, the appellant employer, testified that the appellee was working for him at the time of his injury and reported the injury to him. He says that actually, the claimant and three other men were

lifting the beam because he himself had a weak back and wasn't doing much lifting. He says that Mr. Cotter reported that he had pulled something in his side but didn't know just what it was—

> "so we just went ahead—I told him not to do any more lifting that day and see what happened to it because we didn't know exactly what it was."

Dr. Carl B. Arnold reported that he examined the appellee on September 23, 1968, and diagnosed a right inguinal hernia which was repaired on September 30, 1968. Dr. Arnold concluded his report as follows:

> "His hernia was indirect inguinal with no significant ring formation on a fairly good sized sac. This means to me the hernia was of very recent occurrence and I assume related to his work."

The opinion of the referee which was adopted by the full commission sets out conclusions as follows:

> "Section 13 (e) of the Workmen's Compensation Act, pertains to hernias and provides:
>
> '(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;
>
> (2) That there was severe pain in the hernial region;
>
> (3) That such pain caused the employee to cease work immediately;
>
> (4) That notice of the occurrence was given to the employer within forty-eight hours thereafter;
>
> (5) That the physical distress following the occurrence of the hernia was such as to require the

attendance of a licensed physician within 48 hours after such occurrence.'

Respondent has contended that claimant did not comply with sub-section 2, in that there was severe pain in the hernial region. The evidence reflects that at the time of the lifting of the heavy steel beam, along with three other employees, that claimant did feel a stinging sensation and burning in his inguinal region and reported this to his employer and he was told not to do any additional lifting and see how he got along. Section 3 provides that such pain caused the employee to cease work immediately. The evidence reflects that the employer did tell claimant to cease work and not do any heavy lifting. Sub-section 5 provides that the physical distress following occurrence of the hernia was such as to require the attendance of a licensed physician within 48 hours after such occurrence.

The employer was notified at the time by the claimant that he had a stinging, burning sensation in his inguinal region as a result of lifting this steel beam and the provision of Section 13 following sub-section 5 comes into being here and it provides: 'In every case of hernia it shall be the duty of the employer forthwith to provide the necessary and proper medical, surgical and hospital care and attention to effectuate a cure by radical operation of the hernia, to pay all reasonable expenses in connection therewith and in addition to pay compensation not exceeding a period of 26 weeks. In case the employee shall refuse to permit such operation it shall be the duty of the employer to provide all necessary first aid, medical and hospital care and service, and to supply the proper and necessary truss and other mechanical appliances to enable the employee to resume work, etc.'

In construing all of Section 13 (e) pertaining to hernias it is shown that when the claimant herein

reported his injury to his employer the burden shifted to the employer and it was incumbent upon him to send the man to a doctor to determine what was the matter and the extent of his injury. . ."

We agree with the Commission that it was incumbent upon the appellant employer to send the appellee to a doctor to determine what was the matter and the extent of injury, but we do not agree that such obligation stemmed from a shift in burden of proof. The statute places a separate and direct duty on the employer to furnish the necessary and proper medical, surgical and hospital care in hernia cases, as well as in other types of injury, and we see no connection between the duty imposed by statute upon the employer and the duty imposed by statute upon the employee.

This court did not write the workmen's compensation statutes and we do not propose to do so now. The statute does not provide compensation benefits for every injury sustained by a workman in the course of his employment. The Workmen's Compensation Law provides no benefits at all for pain and suffering; it provides very limited benefits for head or facial disfigurement (§ 81-1313 [g]), and it provides no benefits in claims for hernia unless five different things be shown to the satisfaction of the Commission.

We pass up further comment on the first, second and fourth requirements, as our decision rests primarily on the third and fifth statutory requirements. Under the third requirement it must be shown that such pain[1] caused the employee to cease work immediately. This requirement could be in no plainer language. We recognize the possibility that the employer *may have* told the appellee to cease work, as found by the Commission, but we fail to find such specific instructions in the record. On this point, after testifying as set out on page 3, supra, in answer to questions by the referee, the appellee continued as follows:

[1]Severe pain in the hernial region referred to in the second requirement.

"Q. So he told you to take it easy?

A. Yes, sir.

Q. Did he tell you to continue to work?

A. No, sir he didn't—I didn't ask him—I went ahead and worked on my own—we was busy and trying to get another house framed up over there."

The appellant employer testified on this point as follows:

"Q. What, if anything, did you advise him?

A. Well I didn't know just what it was so we just went ahead—I told him not to do any more lifting that day and see what happened to it because we didn't know exactly what it was."

The statute does not require that it be shown to the satisfaction of the Commission that the employee *be told* by his employer *to quit work.* The statute requires that it be shown that the employee *did cease work immediately,* and that he did so because the pain he suffered was severe enough to cause him to do so. If "immediately" means two weeks in the case at bar, what about the next case involving three weeks and the next that may involve three months? There is no waiver or estoppel involved in the case at bar as there was in the case of *Prince Poultry Co.* v. *Stevens,* 235 Ark. 1034, 363 S. W. 2d 929. In the *Stevens* case rather than telling the claimant to *cease* work, as the Commission found was done in the case at bar, the employer insisted that the claimant Stevens *continue to work* because he was the only one available who knew the egg truck route. The claimant Stevens suffered pain which prevented him from doing his regular work so he was furnished a helper and only showed the helper where to go. He continued in this manner

for the four days following his injury before he was able to consult a doctor.

The fifth and final requirement that must be shown to the satisfaction of the Commission is that the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within 48 hours after such occurrence.

In the case of *Potlatch Forests v. Burks*, 244 Ark. 714, 426 S. W. 2d 819, the claimant, while operating a cut-off saw on December 22 sustained an application of force directly to his abdominal wall when a board kicked back and struck him. The appellee experienced severe pain but after resting a few minutes continued to work until quitting time. He slept well that night but was bothered with pain the next morning and although suffering on December 23, he worked that day. The plant closed December 23 for Christmas holidays and appellee was unsuccessful in his attempt to contact a doctor on December 24. He again tried to contact a doctor on December 25 but without success. Being still unable to contact a doctor on December 26, the claimant returned to work on December 27 but the pain became so severe by 9:30 a.m. he was forced to stop working. The claimant finally was able to contact a doctor on December 28 at which time his hernia was diagnosed. The Commission denied the claim for compensation and denial was affirmed by the circuit court. In affirming the circuit court judgment, this court said:

"When the testimony is viewed in the strongest light in favor of the Commission's finding, as we must do, *Fagan Electric Co. v. Green*, 228 Ark. 477, 308 S. W. 2d 810 (1958), we find that there was substantial evidence to support the Commission's denial of relief to appellee."

In *Miller Milling Co. v. Amyett*, 240 Ark. 756, 402 S. W. 2d 659, the claimant sustained his injury when he picked up a sack of feed on March 6, 1964. He rested

for about 30 minutes and before going home told his employer of the injury. He meant to go to a doctor but kept putting it off for a period of four months, after which time he did go to a doctor who diagnosed a hernia. In reversing a judgment of the circuit court which affirmed an award of compensation by the Commission, this court said:

> "The appellee's position really narrows down to the contention that since he suffered severe pain on March 6 his condition therefore 'required' the attendance of a physician within forty-eight hours. The fallacy in this argument lies in its disregard of the fact that severe pain must exist in every instance of a compensable hernia, for that condition is the second of the five statutory requirements. Hence, if the appellee is right, the fifth requirement—that the attendance of a physician be required within forty-eight hours—adds nothing whatever to the earlier statement that severe pain must occur. We are not at liberty to give absolutely no meaning and effect to the plain language of the statute. We must conclude that the requirement of immediate medical attention was not sufficiently established in this case."

Further discussion of what must be shown by the claimant in order to establish a claim for hernia would only add words without substance to this opinion. The statute is plain as to what must be shown in order to establish a claim for hernia and the record is plain that the appellee failed to make such showing. The appellee failed to show that severe pain caused him to cease work immediately, and he failed to show that the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within 48 hours. The statute seems designed for just such situation. If appellee's hernia occurred on September 12, the pain was not severe enough to cause him to quit work immediately nor was the physical distress of such nature to require the attendance of a physician within 48 hours, or within two weeks as

for that matter. If the hernia did not occur until the "big knot" appeared on Thursday following the examination on Monday, then the occurrence of the hernia did not immediately follow as a result of lifting the steel beam—it followed two weeks later.

Except as to the lapse of time before seeing a doctor, the case at bar is almost on all fours with our very recent case of *A. G. Haygood* v. *Turner*, 247 Ark. 724, 447 S. W. 2d 316. The main difference in the *Turner* case and the case at bar was that Turner did not see a doctor for more than six months, as compared with two weeks in the case at bar. In *Turner* we distinguished the *Prince* and *Miller* cases and reversed the circuit court judgment which had reversed an order of the Commission disallowing the claim.

It might be argued, with considerable logic, that the specific statutory requirements as to proof in claims for hernia, penalize the honest, industrious and conscientious workman who fails or refuses to put down his tools immediately and rush to a doctor every time he feels pain following sudden strain or effort. The record before us in the case at bar indicates that the appellee was just such workman. It is a well recognized fact, however, that hernias may occur following any one of the numerous strains and efforts the average active individual workman may encounter during the 128 hour rest week, as well as during the 40 hour work week. It is a matter of common knowledge that witnesses do not *see* hernias sustained by fellow workmen as they would see a broken leg or broken arm. Consequently, the people have seen fit to make, and the legislature has seen fit to leave, a compensable hernia a rather dramatic occurrence under the statute, with little or no room left for question or doubt that it did occur within the course of employment as an immediate result of sudden effort, severe strain or force applied to the abdominal wall. The wording of the statute assumes the existence of a hernia. The statutory requirements of proof are directed at *claims* for hernia and not the existence or occurrence of a hernia.

The judgment of the circuit court is reversed and the cause dismissed.