OSCEOLA FOODS, INC., Employer,
AETNA INSURANCE COMPANY, Insurance Carrier
*v.* Johnny W. ANDREW

CA 84-394                                    685 S.W.2d 813

Court of Appeals of Arkansas
Division II
Opinion delivered March 6, 1985

96

*Penix, Penix, Mixon & Lusby,* for appellant.

*Charles E. Ellis,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. Osceola Foods, Inc. appeals from an award of the Workers' Compensation Commission awarding Johnny W. Andrew benefits for a hernia sustained in the course of his employment. The appellants contend that there was no substantial evidence to support the findings of the Commission in that requirements (2), (3) and (5) of Ark. Stat. Ann. § 81-1313(e) (Repl. 1976) were not met in this case. We do not agree.

Ark. Stat. Ann. § 81-1313(e) (Repl. 1976) provides as follows:

(e) Hernia: In all cases of claims for hernia it shall be shown to the satisfaction of the Commission:

(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

(2) That there was severe pain in the hernial region;

(3) That such pain caused the employee to cease work immediately;

(4) That notice of the occurrence was given to the employer within forth [forty]-eight (48) hours thereafter;

(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two (72) hours after such occurrence.

On appellate review of workers' compensation cases the evidence is reviewed in the light most favorable to the findings of the Commission and given its strongest probative value in favor of the Commission's order. The issue is not whether we might have reached a different result or whether the evidence would support a contrary finding. The extent of our inquiry is to determine if the finding of the Commission is supported by substantial evidence. Even where a preponderance of the evidence might indicate a contrary result we will affirm if reasonable minds could reach the Commission's conclusion. *Bankston* v. *Prime West Corp.,* 271 Ark. 727, 610 S.W.2d 586 (Ark. App. 1981); *Clark* v. *Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1979).

The appellee testified that on Thursday, February 25, 1982, he was moving a 200-pound motor onto a pallet when he felt pain in his lower abdomen and groin. Ordinarily more than one person would have performed this job but at that time he was working alone. When he first felt the pain he raised up, grabbed his groin and just stood there for a minute or two. He went into the bathroom where he remained for ten to fifteen minutes until the pain subsided. He returned to work and did no more lifting but he continued to feel the pain throughout the day. He thought that he might have mentioned the incident to his supervisor shortly thereafter but he was not positive. There is no question that he did inform his supervisor the next day.

After appellee left work he was still in pain. He went

back to work on Friday although he was hurting and worked until 11:00 or 12:00. He said he did no lifting and returned to work because he needed the money. His pain was gradually getting worse. On Saturday morning his pain was so unbearable that he could not stand up. To relieve the pain he took one of his mother's pain pills. He had a serious allergic reaction from it, broke out in a rash and went to the hospital where he was seen by Dr. Biggerstaff. The doctor treated him for the drug reaction and, after being told of the pain in his groin, determined that he had suffered a hernia and referred him to Dr. Fergus who performed surgery the following Monday.

The appellants' first contention that there was no severe pain in the hernial region as required by Ark. Stat. Ann. § 81-1313(e)(2) is based on the stipulated testimony of an insurance adjuster regarding a taped conversation with the appellee in March 1982. The transcription of that conversation contained appellee's statement that he "didn't feel very much at the time you know, kind of a little strain, but that night and the next morning I was hurting down in my lower abdomen."

Q. Okay, then you didn't feel any sudden, you know, . . .

A. Not really.

Q. Pain or anything? Nothing hit you in the stomach?

A. Just a little, but you know I didn't pay much attention to it.

Q. Okay, so you did not have any severe pain or . . .

A. No, it really wasn't nothing like that at all to start with.

When questioned about that statement appellee stated that he did not know exactly what he had told the adjuster. But he did state:

> I don't know what severe pain means. I guess the hernia is the most pain I have ever had. I had a broken jaw once before, years and years ago, but it wasn't that bad. I really don't know what severe pain means. This pain became *absolutely unbearable* Saturday morning. It kept getting worse from Thursday through Saturday. I couldn't ignore it any longer.

The administrative law judge said it was obvious upon a full reading of the statement that the claimant was attempting to explain that the pain had gotten progressively worse over several days after the occurrence until he was treated by a doctor. He pointed out that the word "severe" is a relative and subjective term and what may be severe to one person may not be severe to another. In adopting the findings of the administrative law judge the Commission clearly interpreted appellee's statement as having been made without knowing the significance of the word "severe" and found that appellee considered the pain to be severe especially when he was comparing the pain over a several-day period. The Commission apparently attached more significance to appellee's testimony given them under oath that the pain became "absolutely unbearable" than it did to his statements made to the adjuster. The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. We conclude that the Commission's finding that there was severe pain in the hernial region is supported by substantial evidence.

The appellants next contend that the Commission's finding that such pain caused the appellee to cease work immediately is not supported by the evidence. This argument is based upon the testimony that the appellee only ceased work for fifteen or twenty minutes and continued to work both that day and until noon the following day. Appellants argue that so short a pause in his work is not sufficient to meet the third statutory requirement of immediate cessation and that to hold otherwise would defeat the purpose of the requirement. We agree that due to possible uncertainty in determining which of several causes may have produced a hernia this requirement, among others, was made because a dramatic demonstration of the

causal connection between the work strain and the hernia leaves little doubt as to cause and effect. However, we do not agree that such causal connection can be dramatically manifested only by an instantaneous and continual cessation of work. Nor should the causal connection be determined by mathematical formulas or measured by minutes or hours. It should be based on evidence which satisfies the finder of fact that the cessation from work became necessary soon enough after the trauma to establish that there was a causal connection under the circumstances of the case.

While our courts have decided a number of cases involving § 81-1212(e)(3) counsel do not cite and we have been unable to find a case which addresses the meaning to be placed upon the word "immediately." In 1(B) Larson, *Workmen's Compensation Law*, § 39.70 (1982), Professor Larson states the rule as follows:

> The "immediacy" called for by some of these tests, in relation to descent of the hernia after injury, occurrence of pain, and cessation of work, has, on the whole, received a rather subtle interpretation by the courts. But denials may still be encountered when intervals are involved that cannot by any stretch of language be called "immediate," such as twelve days, or two months, or six months. The ultimate objective of the statute, which is to distinguish nonindustrial congenital hernias from those definitely produced by trauma or effort at work, is used by the courts to provide guidance in determining how short a time "immediate" must be in the circumstances. . . . "Immediately," then, should be interpreted in the light of its purpose of ensuring causal connection between the employment and the hernia.

In *Consolidated Coal & Coke Co. v. Lazaroff,* 109 Colo. 248, 124 P.2d 755 (1942) the court held that the word "immediately" has different meanings depending upon the purpose sought to be accomplished and as used in workers' compensation statutes "does not mean instantaneously, but contemplates that there may intervene permissively between

cause and effect an interval of time reasonably sufficient for effect to follow cause in the usual course of nature." The court also stated:

> Obviously such period of natural tolerance cannot be fixed arbitrarily as consisting of so many minutes, hours or days, but must be determined factually from the circumstances of each case.

In the leading case of *Borodaeff* v. *Province Line Dairy,* 110 N.J. 20, 160 A. 513 (1932), the court stated:

> Thereby it seems clear that the phrase "immediately followed the cause" should not be construed to mean "instantly followed the strain." Probably in most such cases there is some appreciable lapse of time between the cause and the descent. No doubt the word "immediately" is sometimes used in a sense of "instantly," but that is by no means its only meaning. Webster's New International Dictionary gives the following definition of "immediately": "Without intermediary; in direct connection or relation; in a way to concern or affect directly or closely; without intervention of any person or thing; proximately."

> We think that the phrase "immediately followed the cause" should be held to mean "soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work."

In *Lucedale Veneer Co.* v. *Rogers,* 48 So.2d 148 (Miss. 1950) the court stated the rule as follows:

> The construction must be sensible as well as liberal. Under Items (4) and (5), *supra,* a claimant has forty-eight (48) hours within which to get a doctor and to report to his employer, after noticing the occurrence of the hernia. In view of these provisions, the fair construction is that the ceasing of work must be in a reasonable time, under the circumstances, and the

complaint must be confirmed and reported within forty-eight (48) hours.

In *Riley* v. *Monark Boat Co.*, 269 Ark. 819, 602 S.W.2d 411 (1980) although the court did not state the above rule it is clear that this court applied it. There the worker injured himself on Thursday while lifting a boat. He reported this to his supervisor immediately and was advised to continue with his work, which he did. Later in the day he saw a physician who also advised him to return to work. Although in pain he worked Friday and the following Monday and Tuesday and three hours on Wednesday before ceasing. The court held that he had met all the requirements of § 81-1313(e), including immediate cessation and stated:

> [E]ach step was met promptly and fully and in such fashion as to satisfy even the most skeptical . . .

> Where . . . [the claimant] ceased work immediately and reported the occurrence to his employer and, although instructed to return to work, he recognized within an extremely brief period the need to see a physician, the combined effect of these elements and the promptness with which they occurred has significant probative force.

Here there was evidence that the pain at the time of the injury was so severe as to cause appellee to grab his groin and stop working for fifteen or twenty minutes, that he was not able to work his usual way after the incident, reported his injury to his employer in 48 hours, and required, sought and received the services of a licensed physician within 48 hours. Applying the rule in Larson and the cases cited there, we cannot conclude that the finding of the Commission that the cessation of work was "immediate" is not supported by substantial evidence.

The appellants finally contend that the finding of the Commission that the appellant had suffered physical distress following the occurrence of the hernia which required the attendance of a physician within 72 hours was not supported by substantial evidence. They argue that the

appellee admitted that he went to see a doctor within the prescribed time because of his allergic reaction and not because of his hernia. The appellee did state that it was the reaction that caused him to go to the hospital and further stated that he told the doctor that he had pain in his groin and that the reason that he had taken the pain pill was because of the groin pain. He stated that on Saturday morning when he got up he was hurting so bad he could hardly walk or stand up and the pain was just unbearable.

The evidence shows that he did tell the doctor about his pain and that within the prescribed time limit the doctor diagnosed the hernia and scheduled immediate surgery. Ark. Stat. Ann. § 81-1212(e)(5) does not require that a claimant prove that he was actually attended by a physician within 72 hours but only that he needed the services of a physician during that period. *Brim v. Mid-Ark Truck Stop*, 6 Ark. 119, 639 S.W.2d 75 (1982). The diagnosis of a hernia would confirm the need of the services of a physician which is all that section requires.

Affirmed.

CORBIN and GLAZE, JJ., agree.