CAGLE FABRICATING AND STEEL, INC. *v.* Roger D.
PATTERSON

CA 90-481                                        819 S.W.2d 14

Court of Appeals of Arkansas
En Banc
Opinion delivered November 6, 1991

*Warner & Smith*, by: *Wayne Harris*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Eldon F.*

*Coffman* and *Douglas M. Carson*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Workers' Compensation Commission which awarded compensation benefits to the claimant, Roger D. Patterson, upon a finding that he had sustained a work-related hernia. Appellant argues the decision is not supported by substantial evidence and is contrary to law.

The record contains evidence that on December 28, 1988, Patterson, a 29-year-old welder, was pulling a sixty-pound part from a jig when he felt a pulling sensation on his right testicle. He testified that he had a sudden flash of severe pain; that he stopped work and reported the incident to his supervisor; and that the lunch bell rang about that time. The pain subsided during the lunch hour and he went back to work. He said he worked for the next two weeks with a nagging pain which was not really severe but which got worse, and by January 16 the pain became so severe that he went to see his doctor.

In a letter dated March 1, 1989, Dr. W. F. Dudding stated that he saw the claimant on January 16, 1989, and his examination, "revealed tenderness in the right testicle with no marked epididymal swelling, a mild fingertip inguinal hernia on the right with tenderness in this area." His letter then states that "a diagnosis of inguinal strain versus small hernia versus epididymitis was entertained and patient was treated with anti-inflammatory medication for about a week." The letter also stated that the claimant suffered increasing discomfort and that Dr. Dudding sent the claimant to see a surgeon, Dr. John J. Weisse, who found an inguinal hernia and repaired it on January 20, 1989. Dr. Dudding's letter of March 1, 1989, also stated that the "facts are consistent with an on-the-job injury on December 28, 1988, as per Mr. Patterson's story," and "it is not unusual that a very small hernia be very painful, yet still be very difficult to detect even by a professional let alone a layman who could not be expected to determine what the problem was."

The history and physical report made by Dr. Weisse for the claimant's admission to the hospital states that the doctor's examination had "confirmed a right inguinal hernia." As his "impression at the time of admission," Dr. Weisse recorded a "job related right inguinal hernia." The "operative report" lists

the postoperative diagnosis as a "right direct inguinal hernia," and describes in detail the "hernia repair procedure" which occurred on January 20, 1989.

Arkansas Code Annotated Section 11-9-523(a) (1987) provides:

(a) In all cases of claims for hernia, it shall be shown to the satisfaction of the commission:

(1) That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

(2) That there was severe pain in the hernial region;

(3) That the pain caused the employee to cease work immediately;

(4) That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter;

(5) That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two (72) hours after the occurrence.

The Commission held that these criteria had been met and found the claimant's hernia to be compensable. It stated:

We find that Patterson's effort of pulling on the jig and feeling sudden pain in his testicle constitute the sudden effort and severe pain satisfying the first two criteria. The Administrative Law Judge erred in ruling that the occurrence of a hernia did not "immediately" follow the pulling incident, since "immediately" does not mean "instantly"; rather, it is only necessary for the hernia to occur in a time and manner making clear the causal connection between it and the strain that occurred. *Osceola Foods, Inc. v. Andrew*, 14 Ark. App. 95, 685 S.W.2d 813 (1985). We find such to be the case, because Patterson gave credible testimony that he was in distress throughout the two weeks before the cause of pain was diagnosed. The employer

appears not to deny that Patterson ceased working and complained to his supervisor contemporaneously with the incident. Thus, it can be seen that all requirements of the statute are met if Patterson's physical distress was such that the attendance of a licensed physician was required within seventy-two (72) hours after the occurrence. The law on this point has been set out in *Ayres* v. *Historic Preservation Associates*, 24 Ark. App. 40, 747 S.W.2d 587 (1988).

The Commission then quoted from our opinion in *Ayers*, which quoted from other cases, including the final sentence of the opinion in *Osceola Foods, Inc.* v. *Andrew*, 14 Ark. App. 95, 685 S.W.2d 813 (1985), which states, "The diagnosis of a hernia would confirm the need of the services of a physician . . . ." *See Osceola*, 14 Ark. App. at 103. The Commission stated:

> We understand the requirements of the fifth subsection to have been effectively negated by the *Ayres* holding. If the diagnosis of a hernia confirms the fact that the claimant needs a physician, it logically follows that any claimant who can prove a work-related hernia has satisfied the fifth requirement. Since we find that Patterson did comply with subsections 1 through 4 and that the injury did occur within the scope and course of his employment, he has met his burden of proof under Section 523(a) and is entitled to appropriate benefits.

Appellant cites a number of Arkansas appellate decisions and argues that the claimant in this case is not entitled to compensation because the Commission's decision is not supported by substantial evidence and because the Arkansas appellate courts have construed too liberally the statutory provisions regarding hernia. As to the five factual requirements set out in Ark. Code Ann. § 11-9-523(a), the appellant contends that the appellee did not "experience that type of severe pain as contemplated by the statute, did not experience continued severe pain after the December 28, 1988, incident, was able to perform his regular employment duties involving strenuous manual labor, and had absolutely no reason to believe medical attention was required until a few days prior to January 16, 1989."

When reviewing a decision of the Workers' Compen-

sation Commission, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Company* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). We believe that there is substantial evidence to support the Commission's findings of fact in this case.

We next examine the appellate decisions which the appellant contends "have construed too liberally the statutory provisions regarding hernia." Those decisions were concerned with the fifth requirement of the statute which requires that "the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two hours after the occurrence." The appellant argues that the Commission's decision in the present case "erroneously found the fifth statutory requirement had been negated by Court decisions."

In the discussion of this issue, we first note that the fifth requirement does not provide that a claimant must prove that he was *actually attended* by a physician within seventy-two hours after the injury, but the statute provides only that the physical distress following the occurrence of the hernia was such as to *require* the attendance of a physician within seventy-two hours after the occurrence. The purpose of this requirement was explained in *Harkleford* v. *Cotter*, 248 Ark. 811, 454 S.W.2d 76 (1970), where the court said:

> It is a matter of common knowledge that witnesses do not *see* hernias sustained by fellow workmen as they would see a broken leg or broken arm. Consequently the people have seen fit to make, and the legislature has seen fit to leave, a compensable hernia a rather dramatic occurrence under the statute, with little or no room left for question or doubt that it did occur within the course of employment . . . .

248 Ark. at 820. The court in *Harkleford* reversed a Commission decision awarding compensation for a hernia claim, but it did not

hold that the claimant must *actually see* a physician within the required period (48 hours at that time). That issue was settled in *Prince Poultry Co. v. Stevens*, 235 Ark. 1034, 363 S.W.2d 929 (1963), where the court adopted the interpretation given in Mississippi to a similar statutory provision in that state. Also, *Prince* noted that one of the meanings of "require" is "to need." In *Miller Milling Co. v. Amyett*, 240 Ark. 756, 402 S.W.2d 659 (1966), Justice George Rose Smith said of the *Prince* case:

> We followed a very similiar Mississippi case, where the court reasoned that for an injury "to require" a physician's attendance within a certain number of days does not invariably mean that the physician must actually be consulted within that time. A substantial compliance may be sufficient."

240 Ark. at 758.

The *Prince* decision was again referred to in *Ammons v. Meuwly Machine Works*, 266 Ark. 851, 587 S.W.2d 590 (Ark. App. 1979), where the Arkansas Court of Appeals said, "As pointed out in the *Prince* case, the statute does not require claimant to prove he was actually attended by a physician within 72 hours after the injury." 266 Ark. at 854. In *Ammons* the claimant tried, but was unable, to see a doctor within 72 hours after injury, and we said the statutory requirement is met "if the evidence shows that within 72 hours after the injury the claimant's condition was such that he sought and needed the services of a physician." The word "sought" was applicable in light of the evidence in that case, but our reference to *Prince* made it clear that we did not think it was necessary that the services of a physician be *sought* within 72 hours; that it was only necessary to show that such services were *required* or *needed* within that period.

The Arkansas Court of Appeals again relied upon *Prince* in *Brim v. Mid-Ark Truck Stop*, 6 Ark. App. 119, 639 S.W.2d 75 (1982), where the Commission's failure to award compensation was reversed. Although the claimant in that case did not see a doctor until 36 days after her injury, we held that the claimant "adequately met her burden of proof that she needed the services of a physician within 72 hours." *See* 6 Ark. App. at 122.

In the *Osceola Foods, Inc.* v. *Andrew*, case, *supra*, one of the contentions made by the appellant was that the claimant's distress following the hernia did not require the services of a physician within the prescribed time because the claimant went to the doctor for treatment of an allergic reaction to a pain pill, not because of the hernia that caused the pain. We relied upon *Brim* for the holding that the claimant was not required to prove that he was "actually attended by a physician within 72 hours but only that he needed the services of a physician within that period." Therefore, in *Osceola*, in the context of the appellant's contention that the claimant's physical distress from the hernia did not require the attention of the doctor who diagnosed the hernia at the time he was seen for the allergic reaction, we stated, "The diagnosis of a hernia would confirm the need of the services of a physician which is all that section requires." *See* 14 Ark. App. at 103.

■ Returning now to the Commission's decision in the present case, we think the Commission was clearly in error when it held that the fifth subsection of Ark. Code Ann. § 11-9-523(a) (1987), was "effectively negated by the *Ayres* holding." Thus, the Commission was also in error in its next statement that "if the diagnosis of a hernia confirms the fact that the claimant needs a physician, it logically follows that any claimant who can prove a work-related hernia has satisfied that fifth requirement." The statement that "the diagnosis of a hernia would confirm the need of the services of a physician" was first made in *Osceola* and was correct in that case because, as we have explained, it applied to the employer's contention in that case.

In *Ayres* we cited *Osceola*, and relied upon its language, when we held there was no substantial evidence to support the Commission's decision that the claimant in that case had not needed the services of a physician within 72 hours of the occurrence of the hernia. We did not, however, hold that "any claimant who can prove a work-related hernia has satisfied the fifth requirement" of the statute, and the statutory requirement was not "effectively negated" by our decision in *Ayres*. In fact, we specifically referred to the statement from *Osceola* only in the context of our discussion of the *sufficiency* of the evidence.

■ However, the Commission's statement in the present

case as to its "understanding" of our decision in *Ayres* is not a finding of fact but amounts only to a conclusion of law. It has been the rule in Arkansas for many years that the Commission must make findings of fact in sufficient detail that the reviewing court may perform its function to determine whether the Commission's findings as to the existence or nonexistence of the essential facts are supported by the evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 507-08, 579 S.W.2d 360 (1979); *Mosley* v. *McGhee School District*, 30 Ark. App. 131, 133, 783 S.W.2d 871 (1990). The Commission has done this in the instant case.

In its opinion the Commission held that the first two requirements of Ark. Code Ann. § 11-9-523(a) (1987) were met because under the law "it is only necessary for the hernia to occur in a time and manner making clear the causal connection between it and the strain that occurred."

As to statutory requirements three and four, the Commission's opinion states, "The employer appears not to deny that Patterson ceased working and complained to his supervisor contemporaneously with the incident." This is, of course, a finding of fact. Moreover, no one testified in this case except the claimant. We have already detailed his testimony as to the "sudden flash of severe pain" and that he stopped work and reported the incident to his supervisor. In fact, he testified that he "stepped back and put my hands on the table, waited a second" and "hollered to the shop foreman." Certainly there is substantial evidence to support the Commission's finding that the third and fourth statutory requirements were met.

And, as to the fifth requirement, the Commission said, "Since we find that Patterson did comply with subsections 1 through 4 and that the injury did occur within the scope and course of his employment, he has met his burden of proof under Section 523(a) and is entitled to appropriate benefits." While the Commission was wrong in thinking that *Ayres* "effectively negated" the fifth requirement of the statute, the Commission specifically found that the claimant "met his burden of proof under Section 523(a)." That is definitely a finding of fact. Moreover, it is a summary of other factual findings which are in sufficient detail for us to determine whether they are supported by substantial evidence. The findings here are not like those in

*Wright* v. *American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986), where the Commission simply found that "claimant has failed to prove her claim by a preponderance of the evidence." There, we said "the record contains no finding as to whether a compensable injury actually occurred on the job, or whether claimant became disabled, or whether she required further medical services, or whether a job-related injury aggravated a preexisting latent spinal disease." So we concluded, "Absent any findings of essential additional facts, this court is not in a position to make a meaningful review of the decision of the Commission." *See also Jones* v. *Tyson Foods, Inc.*, 26 Ark. App. 51, 759 S.W.2d 578 (1988), which we said was "surprisingly similar" to *Wright*. In the instant case, however, the Commission has found:

(1) That "Patterson's effort of pulling on the jig and feeling sudden pain in his testicle constitute the sudden effort and severe pain satisfying the first two criteria."

(2) That "the employer appears not to deny that Patterson ceased working and complained to his supervisor contemporaneously with the incident."

(3) That "Patterson gave credible testimony that he was in distress throughout the two weeks before the cause of pain was diagnosed."

Thus, the Commission found in (1) that the first two requirements of Ark. Code Ann. § 11-9-523(a) had been satisfied. In (2), the Commission found that it did not appear that the employer even contended that the third and fourth requirements of the statute had not been met. And in (3) the Commission found from the claimant's credible testimony that he was in distress throughout the two weeks before the cause of pain was diagnosed. The Commission then summed up these findings by stating that the claimant "met his burden of proof under Section 523(a)." Had the Commission made only this last statement we would be faced with the situation in *Wright* and *Jones* v. *Tyson*, but that is not our situation in this case. Here, the requirements of *Wright* and *Jones* v. *Tyson*, which were based upon *Clark* v. *Peabody Testing Service, supra*, were fully met. In appeals from the Commission, it is our duty to

view and interpret the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the commission and give the testimony its strongest probative force in favor of the action of the commission, whether it favored the claimant or the employer.

*Clark* v. *Peabody Testing Service, supra*, at 265 Ark. 496-97. *See also Fowler* v. *McHenry*, 22 Ark. App. 196, 203, 737 S.W.2d 663 (1987).

▇ Obviously, it can be argued that the Commission's understanding of the law in *Ayres* caused it to make the factual findings that it made in regard to the requirements of Ark. Code Ann. § 11-9-523(a); but it nevertheless made those findings, and they are in sufficient detail for us to review. Therefore, although we do not agree with the Commissions's conclusion of law that our decision in *Ayres* "effectively negated" the fifth requirement of Ark. Code Ann. § 11-9-523(a) (1987), when we consider that the only evidence in the record comes from the claimant and the medical reports, and that the Commission's opinion states the claimant gave "credible testimony," and "met his burden of proof under Section 523(a)" (which includes the fifth subsection), we think the Commission's findings of fact are so clearly supported by substantial evidence that we do not believe those findings were affected by the Commission's misunderstanding of our decision in *Ayres*.

Affirmed.

CRACRAFT, C.J., COOPER, and JENNINGS, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. The majority opinion turns on the conclusion that the Workers' Compensation Commission found that the appellee's distress was such that the attendance of a physician was required within seventy-two hours after the occurrence. I think it clear that the Commission made no such finding, and that its decision was instead based on an erroneous interpretation of the applicable law. Arkansas Code Annotated § 11-9-523(a) provides that:

(a)    In all cases of claim for hernia, it shall be shown to the satisfaction of the commission:

(1)  That the occurrence of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

(2)  That there was severe pain in the hernial region;

(3)  That the pain caused the employee to cease work immediately;

(4)  That notice of the occurrence was given to the employer within forty-eight (48) hours thereafter;

(5)  That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician within seventy-two (72) hours after the occurrence.

In its opinion, the Commission tracked the statutory language and found that the first four requirements of Ark. Code Ann. § 11-9-523 (a) had been satisfied. However, as the following excerpt from the Commission's opinion plainly shows, the Commission made no finding with the respect to the fifth requirement because it concluded that the fifth requirement had been eliminated by our holding in *Ayres v. Historic Preservation Associates*, 24 Ark. App. 40, 747 S.W.2d 587 (1988). The Commission stated in its opinion that:

We find that Patterson's effort of pulling on the jig and feeling sudden pain in his testicle constitute the sudden effort and severe pain satisfying the first two criteria. The Administrative Law Judge erred in ruling that the occurrence of the hernia did not "immediately" follow the pulling incident, since "immediately" does not mean "instantly"; rather, it is only necessary for the hernia to occur in a time and manner making clear the causal connection between it and the strain that occurred. *Osceola Foods, Inc. v. Andrew*, 14 Ark. App. 95, 685 S.W.2d 813 (1985). We find such to be the case, because Patterson gave credible testimony that he was in distress throughout the two weeks before the cause of pain was diagnosed. The employer appears not to deny that Patterson ceased working and complained to his supervisor contemporane-

ously with the incident. *Thus, it can be seen that all requirements of the statute are met if Patterson's physical distress was such that the attendance of a licensed physician was required within seventy-two (72) hours after the occurrence.* The law on this point has been set out in *Ayres* v. *Historic Preservation Associates*, 24 Ark. App. 40, 747 S.W.2d 587 (1988):

> In *Brim* v. *Mid-Ark. Truck Stop*, 6 Ark. App. 119, 630 S.W.2d 75 (1982), this court reversed a Commission decision denying benefits to a claimant who sustained a hernia on July 28, 1980, and did not see a physician until September 2, 1980 — thirty-six days later. Explaining subsection (5), we said:
>
> > The statute does not require a claimant to prove that he was actually attended by a physician within 72 hours after the injury. The statutory requirement is met if the evidence shows that within 72 hours after the injury the claimant's condition was such that he sought and needed the services of a physician. *Prince Poultry Co.* v. *Stevens*, 235 Ark. 1034, 363 S.W.2d 929 (1963); *Ammons* v. *Meuwly Machine Works*, 266 Ark. 851, 587 S.W.2d 590 (Ark. App. 1979).
>
> \*\*\*
>
> In *Prince Poultry Co.* v. *Stevens, supra*, the Arkansas Supreme Court cited with the interpretation given the word "required" by the Supreme Court of Mississippi in *Lindsey* v. *Ingalls Shipbuilding Corporation*, 68 So. 2d 872, which was as follows:
>
> To demand or exact as necessary or appropriate; hence to warrant; to need; call for.
>
> 6 Ark. App. at 121-122, 693 S.W.2d at 76. The only condition for satisfaction of the statutory requirement under *Brim*, then, was that a claimant "required" the services of a physician within seventy-two hours of the occurrence of the injury.
>
> Subsequently, this court in *Osceola Foods, Inc.* v.

*Andrew*, 14 Ark. App. 95, 685 S.W.2d 813 (1985), affirmed the award of benefits to a claimant seeking compensation for a hernia. We cited *Brim* and held specifically that 'The diagnosis of a hernia would confirm the need of the services of a physician which is all that section requires.' 14 Ark. App. at 103, 685 S.W.2d at 818.

*We understand the requirements of the fifth subsection to have been effectively negated by the Ayres holding. If the diagnosis of a hernia confirms the fact that the claimant needs a physician, it logically follows that any claimant who can prove a work-related hernia has satisfied the fifth requirement. Since we find that Patterson did comply with subsections 1 through 4 and that the injury did occur within the scope and course of his employment, he has met his burden of proof under Section 523(a) and is entitled to appropriate benefits.* [Emphasis supplied.]

I submit that a fair reading of the Commission's opinion shows that the Commission merely found that the first four requirements of the statute had been met, and that all that was required was to determine whether the fifth requirement had been satisfied. However, based on its interpretation of our holding in *Ayres, supra*, the Commission concluded that it was unnecessary for the claimant to go further and prove compliance with the fifth requirement because he had been ultimately diagnosed with a hernia.

I disagree with the majority's holding that the Commission made a finding of fact regarding the fifth statutory requirement when it stated that the claimant "met his burden of proof under Section 523(a)." We rejected a similar "finding" of the Commission in *Jones* v. *Tyson Foods, Inc.*, 26 Ark. App. 51, 759 S.W.2d 578 (1988), where the Commission "found" that the claimant failed to meet her burden of proof by a preponderance of the credible evidence. Noting that a claimant is entitled to know the factual basis upon which his claim is denied and that we were unable to determine what the Commission found the facts to be, we reversed and remanded that case for a new decision based upon findings of fact set out in sufficient detail to permit our meaningful review. It would seem that an employer is likewise

entitled to know the factual basis upon which a claim is granted; in any event, the Commission's statement in the case at bar that the claimant met this burden of proof is not a finding of fact, but is instead a conclusion of law. In contrast, a finding of fact is:

> [A] simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.

*Wright* v. *American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986).

The Commission's decision in the case at bar does not enable us to picture whether the claimant needed a physician within the 72-hour statutory period. Nor does the Commission's conclusion that the claimant met his burden of proof under the statute allow us to determine whether the Commission decided this issue in conformity with the law.

The majority opinion recites the oft-repeated rule that we are duty-bound to view the evidence and all inferences deducible therefrom in the light most favorable to the Commission. While this is unquestionably the law, it is important to note that this rule applies to the Commission's findings of fact, not to its opinions or conclusions of law. *See* 3 Larson, *The Law of Workmen's Compensation* § 80:13 (1983). It is apparent that in cases such as this one the presumption in favor of the Commission's findings is of no help in resolving the more basic question of what those findings are.

The Commission was required to find as facts the basic component elements on which its conclusion was based. *Id.* Whether or not the attendance of a physician was required within 72 hours is a necessary component element of the conclusion that the claimant met his burden of proof under the statute. Because the Commission's opinion does not give us a "simple, straightfor-

ward statement" concerning the claimant's need for a physician, we are left to speculate regarding the manner in which the Commission arrived at its decision: Was the Commission convinced that the attendance of a physician was in fact required within the statutory period, or did the Commission instead omit this requirement from its analysis because of its erroneous belief that the requirement had been "effectively negated by the *Ayres* holding"?

I believe that the Commission followed the latter course of reasoning because that is precisely what it said it was doing in its opinion. The majority believes that the Commission was convinced that a physician's attendance was in fact required. I am at a loss to understand how the majority arrived at this understanding of the Commission's opinion which, in a single paragraph, states in unbroken sequence that the fifth statutory requirement was negated by *Ayres*, and that, since the first four statutory requirements had been met, the claimant met his burden of proof under the statute. Nevertheless, the very existence of this disagreement among the judges of this Court concerning what the Commission found exemplifies the inadequacy of the Commission's findings. We are, at best, left to guess what course the Commission took in arriving at its conclusion, and no meaningful review is possible when we are reduced to guessing whether the Commission resolved an issue in conformity with the law.

The Commission's opinion should be reversed and the case remanded because it contains no finding of fact regarding the fifth statutory requirement and because all member of this Court, both in the dissent in the majority, are in agreement that the Commission's interpretation of our holding in *Ayres* was erroneous. I respectfully dissent.

CRACRAFT, C.J., and JENNINGS, J., join in this dissent.